WILHELMENA C. TOBEY *v.* ROBERT S. TOBEY

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

---

Argued November 9, 1973—decided January 15, 1974

*C. Robert Satti,* for the appellant (plaintiff).
*John Rose, Jr.,* for the appellee (defendant).

LOISELLE, J. On August 16, 1971, a decree of divorce was rendered in favor of the plaintiff, Wilhelmena Tobey, by a state referee acting as the court. As alimony, there was assigned and set over to the plaintiff wife all the right, title and interest of the defendant, Robert S. Tobey, in one of the parcels of land and dwellings owned jointly by the parties. In addition, the defendant was ordered to pay the lump sum of $1000 within sixty days of the judgment and continuing alimony of $30 per week. The plaintiff has appealed from the judgment rendered. All of her assignments of error, however, relate to the award of alimony and the refusal of the court to find the defendant in contempt of court.

The court found[1] that the parties were married on November 5, 1950, and the plaintiff separated from the defendant in March, 1969. The defendant was guilty of intolerable cruelty to the plaintiff.

The defendant operated a seasonal business of general contracting and the assets of his business totaled $12,700. He also owned a horse, a small boat and a mobile home. During their marriage the parties acquired three parcels of real property which they jointly owned at the commencement of the divorce action. During the pendency of the action the court (*Armentano, J.*) ordered "that the plaintiff wife live in Gutterman 2, on Gutterman Road rent free; defendant to pay for mortgage, taxes and insurance; also understood that the defendant will collect the rents and pay bills on three [sic] other properties jointly owned by the parties." The defendant was heavily in debt and was earning about $100 a week at the time of trial. The plaintiff's take-home pay was $167.36 every two weeks. Subsequent to the commencement of the divorce action one of the properties jointly owned by the defendant and the plaintiff was foreclosed. In addition, the land and the building assigned to the plaintiff by the divorce judgment were already in foreclosure with the law day set for about a month after the date of judgment.

The plaintiff has assigned as error the conclusion of the court that the defendant was not in con-

---

[1] The plaintiff abandoned many of her assignments of error relating to the finding. Of those sections still challenged, the one paragraph of the court's finding is supported by the appendices to the briefs and the nineteen paragraphs of the draft finding either are more detailed facts or are facts which were not admitted or undisputed. None of the deletions or additions requested by the plaintiff is warranted. Practice Book §§ 628, 717, 718; *Connecticut Bank & Trust Co.* v. *Hurlbutt*, 157 Conn. 315, 323, 254 A.2d 460.

tempt. While this is a somewhat unusual claim, review of such a question is within the powers of this court in a case of civil contempt. *Baldwin* v. *Miles,* 58 Conn. 496, 497, 20 A. 618; Annot., 24 A.L.R.3d 650, 663 § 6 (a); contra, 668 § 6 (b), 672 § 8. Contempt can be civil or criminal in character. *State* v. *Jackson,* 147 Conn. 167, 169, 158 A.2d 166; *Welch* v. *Barber,* 52 Conn. 147, 156. It may be denominated civil when the conduct constituting the contempt is directed against some right of the opposing party, as in this case where acts required by the court for the benefit of the plaintiff allegedly were neglected. *McTigue* v. *New London Education Assn.,* 164 Conn. 348, 352, 356, 321 A.2d 462; *Welch* v. *Barber,* supra; *Lyon* v. *Lyon,* 21 Conn. 185, 198–99. The court's order regarding the plaintiff's residence and the defendant's financial duties was interlocutory in nature and terminated with the rendition of the final judgment. *Saunders* v. *Saunders,* 140 Conn. 140, 146, 98 A.2d 815. In *Nowell* v. *Nowell,* 157 Conn. 470, 482, 254 A.2d 889, cert. denied, 396 U.S. 844, 90 S. Ct. 68, 24 L. Ed. 2d 94, this court ruled that "[i]n a divorce or separation action, a husband cannot be punished for his civil contempt arising from noncompliance with preliminary injunctions after a final judgment has been rendered unless the final judgment itself awards damages for the civil contempt." We agree, as the authority cited on page 483 of *Nowell* states, that where a final decree of divorce has been rendered, any orders regarding pendente lite alimony are merged in the final decree and thereafter, no independent action for contempt based on the temporary alimony order can be properly brought. Review may be made, however, of that part of a final order which fails to cite a defend-

ant for contempt or which fails to incorporate an accumulated arrearage of pendente lite alimony.

The scope of the review for contempt has often been stated by this court. "Contempts which do not occur in the presence of the court . . . are not punishable by statute, but rather, 'are defined and punished by the common law.' *Welch* v. *Barber,* 52 Conn. 147, 156. 'An adjudication of contempt is final and may be reviewed only on questions of jurisdiction such as whether the court had authority to impose the punishment inflicted and whether the act or acts for which the penalty was imposed could constitute a contempt.' *State* v. *Jackson,* . . . [147 Conn. 167, 170, 158 A.2d 166]; *Goodhart* v. *State,* 84 Conn. 60, 63, 78 A. 853." *Stoner* v. *Stoner,* 163 Conn. 345, 359, 307 A.2d 146. In this case, the question is whether the court was in error in refusing to impose punishment for the alleged noncompliance with its pendente lite order.

The court did not find that the defendant voluntarily depleted his assets during the time that the divorce was pending, although the plaintiff had asserted this at the hearing. The evidence was conflicting and the finding clearly indicates that the court simply did not believe the plaintiff's claim in this respect. Furthermore, an unattacked finding states that the defendant was heavily in debt at the time of the hearing. The finding amply supports the court's refusal to hold the defendant in contempt of court for failure to follow the pendente lite order. The inability of the defendant to obey an order of the court, without fault on his part, is a good defense to a charge of contempt. 17 Am. Jur. 2d, Contempt, § 51.

The main thrust of the plaintiff's argument is twofold. She first claims that the court prevented sufficient questioning of the defendant on the issues of whether he voluntarily reduced his financial assets during the pendency of the divorce action and whether he falsified statements of his income. One unattacked finding of the court states: "Counsel for plaintiff on November 19, 1970 examined the defendant at great length on defendant's financial affidavit and other matters, developing a complicated situation involving mortgages, attachments, rental collections, interference by counsel for plaintiff in collections, vacancies in some tenements, repairs ordered by authorities, the value of various articles of personal property, earnings of the defendant in past years, rentals in past years and collection and disposal of rentals received by parties in past years." In addition, counsel for the plaintiff examined the defendant fully as to his gross receipts from his business for the last five years. No error has been shown concerning the offer of testimony as claimed by the plaintiff.

The second claim of the plaintiff is that the court erred in refusing to take into consideration the value of the defendant's assets and his gross earnings prior to the commencement of the divorce proceedings. Gross earnings is not a criterion for awards of alimony. It is the net income, which is available to the defendant, which the court must consider. The finding indicates that the court allowed extensive cross-examination of the defendant as to his gross earnings, expenses and net earnings. The conclusion of the court that the defendant was earning and had been earning during the four prior years about $100 a week is amply supported by the finding. As to the balance of the plaintiff's

claim, the court's comments do indicate that it did not care how the assets were depleted but that it was only interested in how much was available at that time. In this state neither a husband nor a wife acquires, by virtue of marriage, any interest in the real or personal property of the other during the other's lifetime. General Statutes § 46-9; *Cherniack* v. *Home National Bank & Trust Co.,* 151 Conn. 367, 370, 198 A.2d 58; *Stewart* v. *Stewart,* 5 Conn. 317, 321. The primary basis for an award of alimony has been not to punish a guilty spouse but to continue the duty to support the other who, in legal contemplation, was abandoned. *Hotkowski* v. *Hotkowski,* 165 Conn. 167, 170, 328 A.2d 674; *Stoner* v. *Stoner,* supra, 354; *Shrager* v. *Shrager,* 144 Conn. 483, 487, 134 A.2d 69. Among the circumstances to be considered are the amount of the estate of the spouse, his or her income, age, health and earning capacity; and the age, health, station, separate estate and earnings of the party to be granted alimony.[2] It is to be noted that the amount of the estate is not the greatest amount he

---

[2] Section 46-21 of the General Statutes, under which the Superior Court awarded alimony to the plaintiff, has now been repealed by Public Acts 1973, No. 73-373, § 43, and replaced in part by §§ 20 and 21 of that same act. Section 46 of the new act provides that the act will apply to appeals from any alimony order entered pursuant to a decree of divorce rendered prior to the effective date of the act, October 1, 1973. Even assuming that § 46 applies to appeals taken prior to October 1, 1973, a question which we do not decide, an application of the new statute would have no effect on this appeal. The factors for awards of alimony established under § 21 of the new act parallel those of former case law and include the length of the marriage, the causes for the divorce, and the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties. See *Shrager* v. *Shrager,* 144 Conn. 483, 486, 134 A.2d 69; *Heard* v. *Heard,* 116 Conn. 632, 636, 166 A. 67; *Olmstead* v. *Olmstead,* 85 Conn. 478, 480, 83 A. 628.

or she may have had but the amount at the time of the divorce. This does not mean, however, that one may willfully deplete earnings so as to deny alimony to a former spouse when there is a duty to supply it. In a proper case the amount of alimony awarded may be based upon earning capacity or prospective earnings rather than actual earned income. *Pencovic* v. *Pencovic,* 45 Cal. 2d 97, 102, 287 P.2d 501; *Webber* v. *Webber,* 33 Cal. 2d 153, 160, 199 P.2d 934; *Appleton* v. *Appleton,* 191 Pa. Super. 95, 99–100, 155 A.2d 394; *Knutson* v. *Knutson,* 15 Wis. 2d 115, 118, 111 N.W.2d 905; see *Yates* v. *Yates,* 155 Conn. 544, 235 A.2d 656. In the present case, there is no finding that the earning capacity of the defendant was other than the net earnings found by the court. Taking into consideration the earnings of both parties, the assets existing at the time of the hearing and the other circumstances found, we find that the court did not abuse its discretion in its determination of the amount of alimony awarded to the plaintiff. *Hotkowski* v. *Hotkowski,* supra; *Stoner* v. *Stoner,* supra, 353; *Thomas* v. *Thomas,* 159 Conn. 477, 483, 271 A.2d 62; *England* v. *England,* 138 Conn. 410, 414, 85 A.2d 483.

There is no error.

In this opinion the other judges concurred.