DENISE M. MAYS *v.* DAVID E. MAYS
(11998)

HEALEY, PARSKEY, SHEA, GRILLO and BIELUCH, Js.

Argued March 13—decision released May 22, 1984

*Michael Graham,* for the appellant (defendant).
*John P. Febbroriello,* for the appellee (plaintiff).
*Paul R. Phalen,* for the minor child.

SHEA, J. In this post dissolution of marriage proceeding the trial court found that the defendant was in arrears by $5220 on his child support payments, found him in contempt and ordered that he be jailed until he "purges himself." In his appeal the defendant claims that the court erred (1) in failing to grant his motion to modify the support payments, in finding him in contempt and in punishing him by imprisonment in view of his inability to comply with the order; (2) in excluding evidence that the motive of the plaintiff wife in pursuing the contempt proceeding was to coerce him into surrendering his parental rights to the child; and (3) in awarding counsel fees and the costs of transcripts to defend the appeal. We find error only in the order of confinement and the award of counsel fees.

The marriage of the parties was dissolved on October 12, 1979 and the plaintiff wife was awarded custody of their minor child, who had been born on September 14, 1977. The defendant was ordered to pay thirty dollars per week for support of the child and five dollars per week on an arrearage which had accumulated prior to the judgment of dissolution.[1]

---

[1] The defendant had not appeared in the original dissolution action. Although he asserts that no order of notice of the support order was ever

At the hearing on the plaintiff's motion for contempt on February 14, 1983, both parties appeared with counsel. The plaintiff testified that she had received no payments of child support since the dissolution of the marriage and that the arrearage was $5220. The defendant admitted that he had a "considerable arrearage" but claimed to have made some payments. Although some of these payments were said to have been made by check, he was unable to produce any cancelled checks to verify them. He also testified that the plaintiff had indicated that she was unconcerned about the support payments and "generally refused the offers I made to her."

The defendant testified that since the dissolution of marriage he had been employed at several different companies earning wages varying from $135 to $225 per week, that he was unemployed for about six months when he was receiving psychiatric care, that he worked part time from May to October, 1982, when he entered a community college as a student, and that he had continued to work part time while attending college, earning wages of about fifty-five dollars per week. He said he was attempting to find a full time job but had not yet been successful. He also claimed that he could not pay the support order of thirty-five dollars per week out of his present earnings. He would not oppose a wage execution. He explained his failure to pay support while he was employed as attributable to other bills and various living expenses. He admitted receiving $110 per week as unemployment compensation during part of the period of his unemployment.

The defendant's financial affidavit indicated that at the time of the contempt hearing his total income from

served upon him, as provided by Practice Book § 462, he has expressly waived any claim based upon such lack of notice. Similarly, he has waived the service of an order to show cause upon him in relation to the contempt proceeding.

all sources, including student financial aid, was $59.75 per week; that he owned a 1972 Pontiac automobile valued at $100, and camera equipment and furniture with a combined value of $400; that his indebtedness, in addition to his obligation for child support, was $6884; and that his expenses, excluding the thirty-five dollar weekly support order or any debt payments, were $118 per week, almost twice his weekly income. No other evidence relating to the defendant's financial situation at that time was presented.

In rebuttal, the plaintiff repeated that she had received no payments of support from the defendant and that she had never waived such payments.

The trial court concluded that the defendant had completely flouted the support order by making no substantial payments for four years when he had been employed or receiving unemployment compensation during most of the period. The arrearage was found to be $5220, the defendant was held in contempt and he was committed to the custody of the commissioner of corrections "until such time as the defendant purges himself."

I

"The inability of the defendant to obey an order of the court, without fault on his part, is a good defense to a charge of contempt." *Tobey* v. *Tobey,* 165 Conn. 742, 746, 345 A.2d 21 (1974); Clark, Domestic Relations § 15.3. The defendant relies upon this principle, but to no avail. The evidence amply supports the finding of the court that the defendant, without excuse, had wholly disregarded the support order by making no substantial payment for four years. His claim that the plaintiff had waived the support payments was disputed and this factual issue was resolved against him. The court was not bound to accept his testimony rather than that of the plaintiff. "The trial court, in weighing the credi-

bility of testimony, could conclude that other evidence was more probative." *Stanton* v. *Grigley,* 177 Conn. 558, 563, 418 A.2d 923 (1979).

A contempt adjudication may be reviewed to determine (1) whether the conduct for which the penalty was imposed could constitute a contempt and (2) whether the punishment inflicted was authorized. *Friedlander* v. *Friedlander,* 191 Conn. 81, 84–85, 463 A.2d 587 (1983); *Leslie* v. *Leslie,* 174 Conn. 399, 402–403, 389 A.2d 747 (1978); *State* v. *Jackson,* 147 Conn. 167, 170, 158 A.2d 166 (1960). It is clear that the court could reasonably have found the defendant's failure to make any substantial payments upon the support order for four years was inexcusable and constituted a contempt. The punishment imposed of incarceration "until such time as the defendant purges himself," however, would exceed the court's authority under the circumstances of this case if it is construed to mean that the defendant must remain in confinement until such time as the arrearage of $5220 is paid. Such an interpretation[2] of the order would appear to deprive the defendant of liberty for his lifetime, since the only evidence presented on the subject indicated that his assets were minimal and that he had no available means of paying the large sum required to discharge his obligation. Nothing in the record warrants an assumption that his financial situation was likely to improve during his imprisonment.

"[A] contempt is considered civil when the punishment is wholly remedial, serves only the purposes of the complainant, and is not intended as a deterrent to

---

[2] The order of the court as stated from the bench was as follows: "The court will find the arrearage to be $5220 and the court will find the defendant in contempt and commit him to the commissioner of corrections until such time as the defendant purges himself." The mittimus commands the commissioner of corrections to keep the defendant in custody "until said David Mays purges himself of contempt by paying [the plaintiff] $5220 or until further order of the court."

offenses against the public." *McCrone* v. *United States,* 307 U.S. 61, 64, 59 S. Ct. 685, 83 L. Ed. 1108 (1939); *McTigue* v. *New London Education Assn.,* 164 Conn. 348, 352, 321 A.2d 462 (1973). The sanction of confinement until purged imposed by the trial court was apparently intended to coerce compliance with the support order for the benefit of the plaintiff and the child and not as a punishment to uphold the dignity of the court. *Tobey* v. *Tobey,* 165 Conn. 742, 745, 345 A.2d 21 (1974); *McTigue* v. *New London Education Assn.,* supra, 352–54. In civil contempt the punishment must be conditional and coercive, and may not be absolute. *Board of Education* v. *Shelton Education Assn.,* 173 Conn. 81, 85, 376 A.2d 1080 (1977). "In criminal contempt the sanction is punitive in order to vindicate the authority of the court." Id. This contempt proceeding, therefore, must be classified as civil rather than criminal.

"[I]n civil contempt proceedings, the contemnor must be in a position to purge himself." 17 Am. Jur. 2d, Contempt § 4; see *Morelli* v. *Superior Court of Los Angeles County,* 1 Cal. 3d 328, 332, 461 P.2d 655, 82 Cal. Rptr. 375 (1969). Otherwise the sanction imposed would cease to be remedial and coercive but would become wholly punitive in actual operation. The order of confinement until purged entered in this case does not specify what the defendant must do in order to purge himself, except to pay the entire $5220 arrearage, a feat which the evidence does not even remotely suggest he was able to perform. The case, therefore, must be remanded to the trial court so that the court may set forth in the order the conditions under which the defendant may be deemed to have purged himself and to be entitled to his release from imprisonment. Those conditions, of course, must be reasonably within the power of the defendant to meet. An order of confinement upon an adjudication of civil contempt must provide the contem-

nor with the key to his release in terms which are not impossible for him to satisfy.

With respect to the claim of error relating to the failure of the trial court to grant the defendant's motion to modify the support order, the record indicates that the motion has not been acted upon. "Upon an application for a modification of an award of . . . support of minor children, filed by a person who is then in arrears under the terms of such award, the court shall, upon hearing, ascertain whether such arrearage has accrued without sufficient excuse so as to constitute a contempt of court, and, in its discretion, may determine whether any modification of current . . . support shall be ordered prior to the payment, in whole or in part as the court may order, of any arrearage found to exist." Practice Book § 464 (a). The court did not abuse its discretion in deferring action on the motion for modification until the contempt proceeding had been resolved. Furthermore, neither in his appeal nor in his preliminary statement of issues, as required by Practice Book § 3012 (a), has the defendant made any reference to the failure of the court to act upon his motion to modify.

## II

The ruling upon evidence which the defendant claims as error occurred during cross-examination of the plaintiff when the defendant sought to inquire whether she and her present husband had instituted legal proceedings for termination of the defendant's parental rights.[3]

---

[3] "Q. All right. Now, you and your present husband have instituted an action, first in the Probate Court and now in the Juvenile Section for the Superior Court for the termination of Mr. Mays' parental rights?

"Mr. Febbroriello: Objection, it is irrelevant to this motion.

"The Court: Sustained.

"Mr. Graham: May I have an exception?

"The Court: You may have an exception."

An objection that such evidence would be irrelevant was sustained and the defendant excepted to this ruling.

"Whenever an objection to the admission of evidence is made, counsel shall state the grounds upon which it is claimed or upon which objection is made, succinctly and in such form as he desires it to go upon the record, before any discussion or argument is had." Practice Book § 288. "Our rule requires that the grounds upon which it is claimed evidence should be admitted or excluded shall be clearly stated." *Johnson* v. *Rockaway Bus Corporation*, 145 Conn. 204, 210, 140 A.2d 708 (1958). It appears that the objection was sustained upon the ground that the testimony sought was not material to the issues being tried. The defendant does not on this appeal challenge the court's determination of irrelevancy, but maintains that the excluded question was pertinent to the credibility of the plaintiff as a witness since it concerned her interest and motivation. See *State* v. *Luzzi*, 147 Conn. 40, 46, 156 A.2d 505 (1959). Although this contention may be sound, it was never asserted in the trial court as required by our rule of practice. "Error does not lie in the exclusion of evidence claimed on an inadmissible ground even though it might have been admissible had it been claimed on another and different ground." *Johnson* v. *Rockaway Bus Corporation*, supra, 210; *Weller* v. *Fish Transport Co., Inc.*, 123 Conn. 49, 57, 192 A. 317 (1937). Accordingly, the defendant cannot prevail upon this claim of error.

## III

The defendant's attack upon the order of the court that he pay $1000 towards the plaintiff's counsel fees in defending the appeal and also provide her with a transcript is based upon his impoverished condition as set forth in his financial affidavit. General Statutes § 46b-62 provides that "the court may order either spouse to pay the reasonable attorney's fees of the

other in accordance with their respective financial abilities and the criteria set forth in section 46b-82,"[4] which pertains to alimony awards. We have indicated that an allowance to prosecute or defend an appeal may be made when the resources of the parties are such as to require the husband to finance it. *Thomas* v. *Thomas,* 159 Conn. 477, 489, 271 A.2d 62 (1970); *Bielan* v. *Bielan,* 135 Conn. 163, 170, 62 A.2d 664 (1948). "Whether to allow counsel fees, and if so in what amount, calls for the exercise of judicial discretion." *El Idrissi* v. *El Idrissi,* 173 Conn. 295, 301–302, 377 A.2d 330 (1977); see *Friedlander* v. *Friedlander,* 191 Conn. 81, 87, 463 A.2d 587 (1983).

The financial affidavit of the plaintiff showed her net income to be $25.83 per week from her employment and her only asset, of more than nominal worth, to be a four year old car valued at $800. She testified that she had remarried and that she and her child lived with her present husband. Although she had private counsel, it does not appear how he was being compensated.

The defendant's financial picture, with income of $59.75 per week and personal property, consisting of a ten year old car, furniture and camera equipment having a total value of $500, was not much brighter than

---

[4] "[General Statutes] Sec. 46b-82. (Formerly Sec. 46-52). ALIMONY. At the time of entering the decree, the superior court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

that of the plaintiff. There is nothing in the record to indicate that he had any resources which could be applied to the payment of her expenses in defending the appeal. Under these circumstances it was an abuse of discretion for the court to order that the defendant pay the sum of $1000 towards the plaintiff's counsel fees. With respect to the portion of the order requiring the defendant to provide his former wife with a copy of the transcript for the purpose of the appeal, there is no indication of the additional cost which he would incur in so doing. The record before us, therefore, does not establish that this aspect of the order was unduly onerous and the defendant has not sustained his burden as an appellant to demonstrate that the ruling was unjustified. *Burritt Mutual Savings Bank of New Britain* v. *Tucker,* 183 Conn. 369, 379, 439 A.2d 396 (1981); *State* v. *Anderson,* 178 Conn. 287, 290, 422 A.2d 323 (1979).

There is no error in the portion of the judgment finding the defendant in contempt.

There is error in the parts of the judgment prescribing the punishment for such contempt and awarding counsel fees for the appeal. These provisions of the judgment are set aside and the case is remanded to the trial court for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.