## ANNA C. TATRO *v.* MAURICE C. TATRO, JR.
### (8980)

DUPONT, C. J., DALY and FOTI, Js.

Argued November 8, 1990—decision released February 15, 1991

*John A. Brennan,* with whom was *Shirani B. Ponnambalam,* for the appellant (plaintiff).

*Karen Fox,* for the appellee (defendant).

*Bridget G. Jenkins,* for the minor child.

DUPONT, C. J. The plaintiff appeals from a judgment finding her in contempt of trial court orders relating to her failure to apply for United States citizenship for her minor child and her failure to cause the child to be returned to the United States.[1] The trial court, *Dranginis, J.,* ordered the plaintiff "to remain in jail until the child is brought before [the] court." No sanctions were imposed by the trial court for the plaintiff's failure to apply for citizenship. The plaintiff claims that the trial court incorrectly found her in contempt when she had no ability at the time to purge herself of contempt of one of the orders and when the necessity for the other order no longer existed. She also claims that attorney's fees should not have been awarded to the defendant pursuant to General Statutes § 46b-87,[2] and that the trial court acted in a biased manner toward the plaintiff, which denied her a fair hearing.

This appeal arises out of an acrimonious dissolution of marriage action, with custody and visitation rights

[1] The plaintiff was also found in contempt for violating the court's orders regarding visitation of the child by the defendant father and for failing to place the marital residence on the market pursuant to the judgment of dissolution of the parties' marriage. No appeal has been taken from these judgments.

[2] General Statutes § 46b-87 provides: "When any person is found in contempt of an order of the superior court entered under section 46b-60 to 46b-62, inclusive, 46b-81 to 46b-83, inclusive, or 46b-86, the court may award to the petitioner a reasonable attorney's fee and the fees of the officer serving the contempt citation, such sums to be paid by the person found in contempt, provided if any such person is found not to be in contempt of such order, the court may award a reasonable attorney's fee to such person. The costs of commitment of any person imprisoned for contempt of court by reason of failure to comply with such an order shall be paid by the state as in criminal cases."

in dispute. The plaintiff and the defendant were married on April 17, 1975, in Taipei, Taiwan, Republic of China. In 1982, the parties adopted Faye Ning Ch'u in accordance with the laws of both Taiwan and Connecticut. She is the biological child of the plaintiff's sister, and a citizen of Taiwan by birth. At the time of the adoption, the child was five years old. The natural mother's legal rights to the child in both countries were terminated in the course of the adoption proceedings.

The Tatros' marriage was dissolved on October 8, 1985. Custody of the minor child was awarded to the plaintiff. The defendant was awarded liberal visitation. The dissolution and subsequent proceedings were marked by a myriad of motions, many of them for allegedly contemptuous behavior, and by accusations of abuse by both parties.

On February 11, 1988, after a hearing on a motion to restrain, the court, *Gill, J.,* granted the plaintiff permission to travel to Taiwan with the child for the Chinese New Year and the wedding of an uncle. Recognizing the defendant's fear that the plaintiff would try to remove the child from the jurisdiction permanently, the court imposed several conditions on this permission, including ordering the plaintiff to file an application for American citizenship on behalf of the child. The court's order stated that any failure to adhere to these conditions might result in a finding of contempt.

No appeal was taken by the plaintiff from the order requiring her to apply for United States citizenship for her daughter but she did not comply with the order regarding citizenship. The plaintiff did return the child to Connecticut by the date set by the court, namely, March 12, 1988. It is this order of the court that was found by the trial court, *Dranginis, J.,* to be the basis of one of the contempt orders involved in this appeal.

The plaintiff claims that, upon the return of the child to Connecticut, the necessity for the condition ceased to exist and, therefore, cannot be the subject of contempt.

Another barrage of litigation ensued after the plaintiff and her daughter returned from Taiwan. On July 11, 1988, the defendant filed a motion for contempt based on the plaintiff's failure to file the application for citizenship. The parties eventually agreed that the plaintiff's attorney would begin the application process, but, for reasons that remain unclear, this was, in fact, never done. Matters next reached a head in December, 1988, when the defendant tried to assert his right to holiday visitation,[3] the subject of an order issued by the court on December 22, 1988. When the defendant went to the plaintiff's home, pursuant to the court order, to pick up the child on Christmas day, he found no one at the family residence. He then filed a motion for contempt on January 3, 1989, because of the plaintiff's failure to comply with the court ordered Christmas visitation. A hearing was held on January 9, 1989, to dispose of five motions, including modification of custody[4] and various contempt motions. The motions did not include the contempt motion for failure to comply with the December 22 court order for visitation. It was revealed at the January 9, 1989 hearing that the plaintiff had sent the child to visit her natural mother in Switzerland on December 23, 1988.

The plaintiff claimed to be unaware of the December 22, 1988 order granting the defendant Christmas day visitation, even though both parties had been

[3] The defendant filed his motion for visitation on December 5, 1988. He also filed three more motions for contempt all dated December 21, 1988.

[4] The defendant had in May, 1987, moved to modify custody, claiming that the plaintiff had mentally and physically abused the child. This motion was one of the motions calendared for January 9, 1989.

present at a December 19, 1988 hearing, at which time the court, *Dranginis, J.,* said it would rule on the defendant's motion for visitation on December 22 in the absence of an agreement between the parties.

Upon learning on January 9, 1989, that the child was out of the country, the court continued the proceedings until January 23, 1989, and ordered the plaintiff to bring the child back to Connecticut. At the January 23, 1989 hearing, the plaintiff testified that the child had not returned to the state. The child had, in fact, been taken by her natural mother to Taipei, Taiwan. The court found that its order of January 9, 1989 had been violated by the plaintiff and, sua sponte, on January 23, 1989, awarded custody of the child to the defendant. The court also ordered the *defendant* to bring the child before the court as soon as possible and ordered the plaintiff not to communicate with the child's natural mother.

In February, 1990, while the child was still out of the country, the defendant filed several more motions for contempt. On March 5, 1990, the court found the plaintiff in contempt for failing to file an application for the child's citizenship and for failing to return the child to this jurisdiction. The court ordered the plaintiff incarcerated until she purged herself of contempt by bringing the child before the court. Another hearing was held on March 8, 1990. At that time, the court-appointed counsel for the plaintiff[5] represented to the court that the plaintiff's brother, who was now living in Connecticut with the plaintiff, had been able to contact the child's natural mother in Taipei, and that she had promised to have the child in Connecticut within two weeks of the hearing. The plaintiff's counsel further asserted that it would take at least two weeks to obtain the necessary visas and airline tickets for the child and her

---

[5] The plaintiff, who was incarcerated, did not attend this hearing.

natural mother. He asked that the plaintiff be released from incarceration pending the arrival of the child and her natural mother, so that the plaintiff could care for her infant daughter, born since the dissolution of the marriage. The court, citing the plaintiff's history of non-cooperation, refused to release the plaintiff.

On March 9, 1990, an article appeared in the Hartford Courant quoting the plaintiff's counsel, who said that he had just received a fax transmission from the plaintiff's family in Taiwan indicating that the family did not intend to return the child to the United States. The court then suspended all proceedings on this matter and ordered the plaintiff to remain in jail until the child was returned to the United States. The plaintiff now appeals from the orders of civil contempt entered on March 5 and March 8, 1990.[6]

Appellate review of a contempt adjudication is limited to determining questions of jurisdiction such as whether the act for which the penalty was imposed could constitute contempt, and whether the punishment imposed was within the authority of the court. *Dunham* v. *Dunham,* 217 Conn. 24, 29, 584 A.2d 445 (1991); *Mays* v. *Mays,* 193 Conn. 261, 265, 476 A.2d 562 (1984).

Courts distinguish between civil and criminal contempt. *Dunham* v. *Dunham,* supra, 28 n.3; *Marcil* v. *Marcil,* 4 Conn. App. 403, 405, 494 A.2d 620 (1985); 17 Am. Jur. 2d, Contempt § 4. Civil contempt is conduct directed against the rights of the opposing party. *McTigue* v. *New London Education Assn.,* 164 Conn.

[6] On March 14, 1990, the plaintiff filed an application for a stay of civil contempt pending appeal. The plaintiff's appeal to this court was filed on March 15, 1990. On March 23, 1990, the trial court, finding that the plaintiff had not complied with its orders, denied the application for a stay. The plaintiff filed another application for a stay pending a decision by this court on her motion to review the trial court's denial of her first application for a stay. This court granted the plaintiff's motion for review and ordered her release pending the outcome of this appeal.

348, 352, 321 A.2d 462 (1973). Furthermore, " '[a] contempt is considered civil when the punishment is wholly remedial, serves only the purposes of the complainant, and is not intended as a deterrent to offenses against the public.' *McCrone* v. *United States,* 307 U.S. 61, 64, 59 S. Ct. 685, 83 L. Ed. 1108 [1939]." *McTigue* v. *New London Education Assn.,* supra.

We conclude that the trial court incorrectly found the plaintiff in contempt for not bringing the child within its jurisdiction. The inability of a contemnor to obey a court order through no fault of her own is a defense to a claim of contempt. *Turgeon* v. *Turgeon,* 190 Conn. 269, 283, 460 A.2d 1260 (1983); *Tobey* v. *Tobey,* 165 Conn. 742, 746, 345 A.2d 21 (1974). In other words, the act for which the penalty was imposed cannot constitute contempt if the actor was unable to obey the order. *Dunham* v. *Dunham,* supra, 29. The plaintiff here was subject to a number of orders that rendered her ability to obtain the physical custody of the child ineffectual. First, the court had ordered her not to communicate with her sister, the person who had physical possession of the child. Second, the plaintiff's passport was impounded as a condition of the stay of the March 5, 1990 contempt. Thus, under the orders of the trial court, the plaintiff was stripped of the means to obtain the child's presence by either persuasion or pursuit.

In addition, the trial court had, on January 23, 1990, removed custody of the child from the plaintiff, awarded it to the defendant and ordered the *defendant* to bring the child before the court. After the entry of these orders, the plaintiff could have reasonably concluded that she was no longer legally obligated to pursue the child, and her failure to do so should not be construed as wilful disobedience of a court order. See *Connolly* v. *Connolly,* 191 Conn. 468, 483, 464 A.2d 837 (1983); *Turgeon* v. *Turgeon,* supra.

In the absence of the ability to purge herself of the failure to bring her child before the court, the punishment imposed by the court ceased to be coercive and became wholly punitive, which is not in the character of civil contempt. *Mays* v. *Mays,* supra, 266; *McTigue* v. *New London Education Assn.,* supra, 352–53. Since this is so, the punishment imposed by the court was not within its authority. The sanction of imprisonment, therefore, cannot stand in this case. See *Dunham* v. *Dunham,* supra.

The court also found the failure of the plaintiff to apply for United States citizenship on behalf of her adopted daughter a contemptuous act. The plaintiff does not on appeal, nor did she at any time in the trial court since the entry of the order by Judge Gill, claim that the order was beyond the power of the trial court to issue. There are many reasons why such an order may be beyond the power of a court.[7] Even if it were ultimately determined that the order requiring the plaintiff to file an application for citizenship was void, however, the plaintiff would still be obligated to obey the order until it was reversed. *Department of Health Services* v. *Commission on Human Rights & Opportunities,* 198 Conn. 479, 486 n.7, 503 A.2d 1151 (1986); *Cologne* v. *Westfarms Associates,* 197 Conn. 141, 147, 496 A.2d 476 (1985). A contempt proceeding does not allow reconsideration of the legal and factual bases of the order alleged to have been disobeyed, which would amount to a retrying of the original controversy. *Cologne* v. *Westfarms Associates,*

---

[7] An order to apply for citizenship directs a change in status, not just a change in behavior. Changes of status, such as marriage, divorce, adoption, citizenship, or religious affiliation usually implicate fundamental personal rights that cannot be the subject of a court order. See *Zablocki* v. *Redhail,* 434 U.S. 374, 98 S. Ct. 673, 54 L. Ed. 2d 618 (1978).

Furthermore, naturalization by coercion does not necessarily terminate a child's citizenship. See *Zaubi* v. *Hoejme,* 530 F. Sup. 831, 834 (W.D. Pa. 1980).

supra, 148. The standard of review of contempt proceedings "precludes a collateral attack on the validity of the underlying order, including an attack on its constitutionality." *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 192 Conn. 1, 3, 469 A.2d 778 (1984).

Here, the only reasons the plaintiff offers for noncompliance with the order to file the application for citizenship are her alleged difficulty with the English language and her unilateral determination that the conditions requiring the order had lapsed. The plaintiff's opinion about the necessity for this order does not excuse her disobedience in the absence of court review. *Cologne* v. *Westfarms Associates,* supra. In addition, considering the plaintiff's employment history, which was in evidence, the length of time she has resided in this country, and the fact that she was represented by an attorney when this order was entered, the court could have reasonably concluded that the plaintiff had the ability to comply with the order to file an application for citizenship, and that her failure to do so was simple disobedience. We find, therefore, that the judgment of contempt for failure to apply for citizenship was properly rendered.

The plaintiff also claims that the trial court denied her a fair hearing because of the court's bias. The plaintiff, however, made no motion for recusal until after the judgments of contempt had been rendered.[8] On appeal, this court generally will not consider the issue

[8] The plaintiff's motion for disqualification of the trial judge was filed on May 1, 1990, almost two months after the judgments of contempt were rendered. The motion was never acted on. The motion will continue to lie dormant because, by this decision, we have set aside the plaintiff's judgment of contempt for failing to return the child to Connecticut. We need not review any sanctions imposed against the plaintiff for failing to file the application for citizenship because there were none. Thus, no further proceedings in the Superior Court are necessary.

of judicial bias where the party failed to make the proper motion for disqualification at trial. See Practice Book § 4185; *Barca* v. *Barca,* 15 Conn. App. 604, 607, 546 A.2d 887, cert. denied, 209 Conn. 824, 552 A.2d 430 (1988). "A litigant must raise the question of disqualification in a timely and appropriate manner; *Pavel* v. *Pavel,* 4 Conn. App. 575, 576 n.2, 495 A.2d 1113 (1985); *Jazlowiecki* v. *Cyr,* 4 Conn. App. 76, 78, 492 A.2d 516 (1985); *Szypula* v. *Szypula,* 2 Conn. App. 650, 654, 482 A.2d 85 (1984); or the claim will be deemed to have been waived. *Verissimo* v. *Verissimo,* 3 Conn. App. 222, 224, 486 A.2d 85 (1985)." *Logical Communications, Inc.* v. *Morgan Management Corporation,* 4 Conn. App. 669, 670, 496 A.2d 239 (1985).

One exception to this general rule exists where the claim of bias is that the trial court's comments strike at the core of judicial integrity and undermine public confidence in the judiciary. *Cameron* v. *Cameron,* 187 Conn. 163, 168, 444 A.2d 915 (1982). The plaintiff's claims of judicial bias here allow us to review them under the doctrine of plain error. Id. We conclude that the court's comments did not deprive the defendant of a fair hearing, and that, unlike the remarks of the court in *Cameron,* they did not constitute a departure from impartiality that would shake the public's trust in the judiciary.

The plaintiff's last claim is that the court incorrectly ordered her to pay the defendant's counsel's fees for prosecuting various motions for contempt. Her assertion is based on her bald statement that such an award is premature.

General Statutes § 46b-87 clearly contemplates an award of attorney's fees upon a finding of contempt. Furthermore, the award of attorney's fees in contempt proceedings is within the discretion of the trial court. *Friedlander* v. *Friedlander,* 191 Conn. 81, 86–87, 463

A.2d 587 (1983). In this case, as in *Friedlander,* the defendant was forced to go to court many times to assert his rights. We conclude that the trial court did not abuse its discretion in awarding attorney's fees to the defendant.

The judgment granting the defendant's motion to hold the plaintiff in contempt for failing to bring the child before the court is set aside and the case is remanded with direction to deny that motion, and the judgments holding the plaintiff in contempt for failure to file an application for citizenship and awarding attorney's fees to the defendant are affirmed.

In this opinion the other judges concurred.