[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION DE: MOTION FOR CONTEMPT (#129)
The defendant filed the present motion for contempt complaining that the plaintiff was wilfully failing to obey the orders of the dissolution judgment as modified on January 27, 1992 pursuant to the parties' agreement.
The plaintiff was obligated to refinance the first mortgage in order to raise sufficient cash to pay the defendant for his interest in the family home. The original judgment provided for the plaintiff to buy out the defendant on July 1, 1993. The parties' modification accelerated the buyout by providing for an CT Page 8398 appraisal of the property and for the plaintiff to thereafter immediately make application for the refinance. From the defendant's proceeds, the plaintiff was to receive $10,000 in settlement of the defendant's unpaid child support, unpaid medical expenses for the children and the remaining child support through April 21, 1992, the youngest child's 18th birthday.
Although the plaintiff called a local bank regarding the refinance, no written application was made until June 5, 1992, after the hearing on this motion was begun (defendant's Exhibit #2). Although the application listed gross rental income of $1025, the mortgage officer did not use the figure correctly in rejecting the application, nor were the loan ratios explored with the plaintiff. Finally, no determination was made as to the maximum mortgage amount for which the plaintiff could qualify.
The testimony of the bank officer, James Nichols, Assistant Vice President, Mortgage Officer of Thomaston Saving Bank, amply demonstrated to the court that the plaintiff's application was not vigorously pursued by the bank in an effort to qualify her for a mortgage.
The court stated
 "Either she qualifies for enough money to be able to complete the original arrangement or she doesn't. A near miss doesn't count in my view."
In other words, it was not conclusive that the plaintiff had the ability to obtain a sufficient mortgage. For that reason, the court then stated:
 "I think it's pretty clear to me that I am going to give her a last chance to save herself from being in contempt. I am going to recess this for a week and let her go make either a Thomaston or Moeller or anywhere else that she wants to go. . ."
and
 "I think to save herself from the assessment of actually being in contempt, I think that's what she better do because civil contempt would be to coerce her into doing something that she has the ability to do, and I have frankly drawn the conclusion after this hearing today that she does, in fact, have the ability to do it, if she approaches it with a CT Page 8399 positive attitude that she's got to complete the bargain that she entered into back in January that's where we're at."
The plaintiff returned to court on August 14, 1992 with a firm mortgage commitment for $60,500 in her hand (plaintiff's Exhibit B), prepared to tender performance on her part.
The final decision on the mortgage application rested with the bank. Until the defendant had either refused to pursue the application or, having the approval in hand, she would not be in a position to purge herself, i.e., by relenting in her refusal to proceed or by accepting the approval and closing the mortgage, Mays v. Mays, 193 Conn. 261.
The defendant was not found in contempt and is not in contempt.
The defendant's motion is denied, as is his counsel's request for attorney's fees.
Harrigan, J.