PAULA-JEAN M. JOHNSON v. ROBERT L. JOHNSON
(AC 28927)
(AC 29057)

DiPentima, Lavine and Dupont, Js.

Argued September 15—officially released December 2, 2008

*John T. Asselin-Connolly*, with whom, on the brief, was *Richard E. Joaquin*, for the appellant (defendant).

*Michael A. Blanchard*, for the appellee (plaintiff).

*Paige Stevens Quilliam*, for the minor child.

*Opinion*

LAVINE, J. The defendant, Robert L. Johnson, brings these consolidated appeals from the trial court's judgment granting the motion for contempt filed by the plaintiff, Paula-Jean M. Johnson, and from the court's judgment rendered following the subsequent compliance review hearing. In AC 28927, the defendant claims that the court abused its discretion when it (1) admitted hearsay during a hearing on the motion for contempt, (2) found him in contempt of the court's orders and (3) ordered him to secure the services of a therapist to effect compliance with the orders. In AC 29057, the defendant claims that the court abused its discretion when, after finding continued noncompliance with its orders, it ordered him to schedule psychological evaluations. We affirm both judgments of the trial court.

The following facts are relevant to both appeals. The plaintiff and the defendant divorced on April 4, 1995. Their only child, a son, was born on May 6, 1992. On August 18, 2005, the court rendered a postdissolution judgment on the basis of a stipulation the parties entered into on August 9, 2005. In the stipulation, the

parties agreed to share legal custody of their son. The defendant obtained primary physical custody, while the plaintiff was granted considerable overnight visitation rights on weekends and during holidays and vacations. The parties agreed that the son would complete therapy sessions for the purposes of "reintroduction" to the plaintiff's new husband and agreed to cooperate regarding these sessions in every reasonable manner. They also agreed to refrain from undermining a healthy parent-child relationship and denigrating the other parent.

On October 27, 2006, the plaintiff filed a motion for contempt, claiming that the defendant had violated the orders of August 18, 2005, by sabotaging the therapy and delaying its commencement. The plaintiff also stated that her relationship with the son had deteriorated and that she had had no visitations with him since July, 2006.

On April 4 and May 17, 2007, the court heard testimony from the plaintiff, the defendant, the family therapist, the son's guardian ad litem and the attorney for the son. On June 6, 2007, the court issued a corrected memorandum of decision in which it found that the defendant wilfuly violated the orders concerning visitations, therapy sessions and the avoidance of denigrating remarks against the plaintiff. The court ordered the defendant either to deliver the son for the next scheduled visitation or to secure the services of the family therapist to facilitate visitation.[1] On June 20, 2007, the defendant filed appeal AC 28927 from that judgment.

On July 16, 2007, the court called the parties into court to review compliance with the orders of June 6, 2007, and, after hearing from counsel for both parties, concluded that there had been none. The court ordered the defendant to schedule and to pay for a psychological

---

[1] The court also ordered the defendant to pay a $1000 fine but stayed that order on July 16, 2007.

evaluation for himself and the son. On August 1, 2007, the defendant filed appeal AC 29057 from that judgment. Further facts will be set forth as necessary.

I

AC 28927

In his appeal from the judgment of June 6, 2007, the defendant claims that the court abused its discretion when it (1) admitted the testimony of the guardian ad litem, (2) found that the defendant wilfuly and knowingly violated the orders from August 18, 2005, and (3) ordered the defendant to secure the therapist's services to facilitate the next visitation between the plaintiff and the son if he was unable to comply on his own. We agree with his first claim but conclude that the court's error was harmless. We disagree with the defendant's second and third claims.

A

The defendant first claims that during the hearing on the motion for contempt, the court improperly allowed the guardian ad litem, Timothy Lenes, to testify about the contents of out-of-court statements and reports. We agree with the defendant but find this evidentiary impropriety to be harmless.

The following additional facts are relevant to our consideration of the defendant's claim. At the hearing on the motion for contempt, Lenes testified that (1) Michael Sturgess, a physician previously involved in the case, told him in a telephone conversation that the defendant was interfering with the son's therapy sessions and that (2) Kelly Reddick, the family therapist, stated in her reports that the defendant was noncooperative during her counseling sessions. The defendant repeatedly objected to Lenes' testimony on the ground that it was hearsay. Our review of the transcript indicates that the court and both attorneys considered

Lenes to be an expert witness. The court's ultimate rationale for admitting Lenes' testimony, however, is less than clear.[2]

" 'Hearsay' means a statement, other than one made by the declarant while testifying at the proceeding, offered in evidence to establish the truth of the matter asserted." Conn. Code Evid. § 8-1 (3). Hearsay is inadmissible except as provided in the Connecticut Code of Evidence, the General Statutes or our rules of practice. Conn. Code Evid. § 8-2. An expert witness may rely on the facts otherwise not admissible in evidence if they are customarily relied on by experts in the particular field in forming opinions on the subject. Conn. Code Evid. § 7-4. "Generally, expert testimony is admissible if (1) the witness has a special skill or knowledge directly applicable to a matter in issue . . . and (3) the testimony would be helpful to the court or jury in considering the issues." (Internal quotation marks omitted.) *State* v. *Pjura*, 68 Conn. App. 119, 124, 789 A.2d 1124 (2002).

We conclude that Lenes' testimony about the content of Sturgess' statement and Reddick's reports should have been excluded. Even if we assume that a guardian ad litem may in some circumstances testify as an expert witness, our review of the transcript indicates that Lenes never stated an opinion or made any recommendations stemming from that role. Lenes' testimony in its essence consisted of relaying Sturgess' and Reddick's

---

[2] Near the end of Lenes' testimony, the court summarized the situation as follows: "On this issue, the court is going to attempt to parse the confluence of issues . . . . Lenes is qualified as an expert by specialized training, skill, knowledge, experience or education. . . . Lenes' testimony about what someone else said does not require a specialized skill [or] knowledge . . . . His testimony about what someone else says is facially hearsay . . . . The issue is not whether . . . Lenes is an expert. The issue is whether what . . . Sturgess purportedly said is admissible under the rules of evidence. . . . Sturgess' opinion of whether [the defendant] violated the court orders is not relevant."

opinions regarding the defendant's cooperation with the therapy sessions. Whatever special skills and knowledge Lenes has as a guardian ad litem were neither applicable to the issue of the defendant's compliance with the court's orders nor helpful to the court in considering that issue. We therefore agree with the defendant that the court improperly permitted Lenes to act as a conduit for hearsay.

The following facts, however, persuade us that the error was harmless. Prior to Lenes' testimony, the court heard testimony from Reddick and the plaintiff. Reddick testified that the defendant was angry, frustrated and concerned about the "reunification" therapy between the son and the plaintiff's husband. She also testified that the defendant sat in the waiting room during the sessions although he refused to participate in them. The plaintiff then testified that she had no court-ordered visitations with her son since July, 2006. She indicated that the defendant and his current wife often recorded her communications with the son or the defendant. The plaintiff stated that the defendant delayed the commencement of the sessions. She also testified about the son's anger and familiarity with the court proceedings. In its memorandum of decision, the court, in addition to finding the defendant's testimony less than credible, based its finding of noncompliance with the court orders on the following factors: the lack of visitations since July, 2006; the defendant's presence in the waiting room during the therapy sessions although it was prearranged that the plaintiff would drive the son home; the defendant's habit of recording his and the son's communications with the plaintiff; and his statements to Reddick that he disagreed with the imposition of the "reunification" therapy. All of these facts were introduced during the plaintiff's or Reddick's testimony.

An evidentiary ruling that does not raise a constitutional question "will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Cole*, 50 Conn. App. 312, 330–31, 718 A.2d 457 (1998), aff'd, 254 Conn. 88, 755 A.2d 202 (2000). In a civil case, the appellant has the burden of establishing the specific harmfulness of the error by demonstrating the likelihood that the evidentiary ruling had affected the result. *Constantine* v. *Schneider*, 49 Conn. App. 378, 393, 715 A.2d 772 (1998).

We conclude that the introduction of hearsay during Lenes' testimony was harmless. The court, in its memorandum of decision, did not rely on any evidence introduced during Lenes' testimony that had not been introduced by either the plaintiff or Reddick, and the defendant does not explain how Lenes' testimony affected the court's decision. See *Sokolowski* v. *Medi Mart, Inc.*, 24 Conn. App. 276, 282, 587 A.2d 1056 (1991) (holding that error harmless because appellant failed to identify any specific harm from improper introduction of evidence).

We therefore conclude that the court improperly allowed the introduction of Lenes' testimony, but we find the admission of such evidence to be harmless.

B

The defendant next claims that the court abused its discretion in finding him in wilful and knowing violation of the judgment rendered on August 18, 2005. We disagree with the defendant.

Our review of a judgment of contempt is limited. "Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense. . . . Contempt may be civil or criminal in character."

(Internal quotation marks omitted.) *Wilson* v. *Cohen,* 222 Conn. 591, 596 n.5, 610 A.2d 1177 (1992). If the "underlying court order was sufficiently clear and unambiguous, we . . . determine whether the trial court abused its discretion in issuing . . . a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." *In re Leah S.,* 284 Conn. 685, 693–94, 935 A.2d 1021 (2007).

"The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses." (Internal quotation marks omitted.) *Wilson* v. *Wilson,* 38 Conn. App. 263, 273, 661 A.2d 621 (1995). "The credibility of witnesses, the findings of fact and the drawing of inferences are all within the province of the trier of fact." *Lord* v. *Lord,* 44 Conn. App. 370, 376, 689 A.2d 509, cert. denied, 241 Conn. 913, 696 A.2d 985 (1997), cert. denied, 522 U.S. 1122, 118 S. Ct. 1065, 140 L. Ed. 2d 125 (1998). "The inability of [a party] to obey an order of the court, without fault on his part, is a good defense to the charge of contempt." *Tobey* v. *Tobey,* 165 Conn. 742, 746, 345 A.2d 21 (1974).

The defendant's principal argument is that he is unable to comply with the court's orders because his son's refusal to see the plaintiff is entirely beyond his control. The defendant is asking us to find his testimony that he is unable to effectuate the visits to be an affirmative defense to the charge of contempt.

First, we do not agree with the defendant's contention that his testimony presents a good defense to noncompliance with the court's orders under *Tobey* v. *Tobey,* supra, 165 Conn. 742.[3] Because the court made a specific

---

[3] Relying on *Tobey,* this court has held that a trial court improperly found a plaintiff in contempt when a number of separately issued court orders rendered her unable to comply through no fault of her own. See *Tatro* v.

finding that the defendant presented insufficient evidence of his inability to facilitate visits between the plaintiff and the son, we need only determine whether that finding was clearly erroneous. See *Wilson* v. *Wilson*, supra, 38 Conn. App. 273 ("In light of the specific finding by the trial court . . . we need not determine whether a reasonable belief that an order of the court need not be obeyed presents a valid defense to a motion for contempt. Instead, we need determine only whether the trial court's finding of fact was clearly erroneous."). The defendant's innocence of any manipulation of the son was disputed, and the court had discretion to reject the defendant's testimony. See *Mays* v. *Mays*, 193 Conn. 261, 264, 476 A.2d 562 (1984) (court not bound to accept defendant's testimony that he was unable to comply with orders). We conclude that the court did not, in light of the factors listed in its memorandum of decision and outlined in part I A, improperly find that the defendant not only failed to facilitate the visitations and to help the plaintiff-son relationship, but undermined it by watching the plaintiff and her son "like a hawk," discussing his anger about the plaintiff's husband with the son and indicating to the son that the plaintiff was untrustworthy.

Second, it is important to note that the court found the defendant to be in violation of not only its order to facilitate the plaintiff's visitation with the son, which is the focus of the defendant's argument, but also its orders to cooperate regarding the therapy sessions and to avoid denigrating the plaintiff. We conclude that the court's finding that the defendant violated the latter

*Tatro*, 24 Conn. App. 180, 186, 587 A.2d 154 (1991). Specifically, the plaintiff in *Tatro* could not comply with the order to bring her child before the court because her passport was impounded, and she was under a court order not to speak to her sister, who had physical possession of the child. See id. We conclude that this defense is unavailable to the defendant in the present case because his alleged inability to comply through no fault of his own is in dispute.

orders also was not clearly erroneous. It was within the court's discretion to infer the violation of the order to cooperate and to avoid denigrating the plaintiff from the defendant's unnecessary presence during the therapy sessions, his express dissatisfaction with the imposition of those sessions, his habit of recording communications with the plaintiff and the son's familiarity with the court proceedings he never attended. See *Lord* v. *Lord*, supra, 44 Conn. App. 376 (drawing of inferences within court's discretion).

We therefore conclude that the court's finding the defendant to be in contempt was not clearly erroneous.

C

The defendant's final claim in his first appeal is that the court abused its discretion by ordering him either to deliver the son to the plaintiff or to secure Reddick's services to facilitate the plaintiff's next scheduled visitation. The defendant relies on *Savage* v. *Savage*, 25 Conn. App. 693, 596 A.2d 23 (1991), in which this court held that the trial court abused its discretion by ordering a postjudgment order for psychological evaluation. See id., 701; see also *Ruggiero* v. *Ruggiero*, 76 Conn. App. 338, 346, 819 A.2d 864 (2003); *Janik* v. *Janik*, 61 Conn. App. 175, 179–80, 763 A.2d 65 (2000), cert. denied, 255 Conn. 940, 768 A.2d 949 (2001). *Savage* stands for the proposition that a court's power to appoint, among others, psychologists and psychiatrists pursuant to General Statutes § 46b-3[4] is limited to pending matters by General Statutes § 46b-6.[5] See *Savage* v. *Savage*, supra, 699–

[4] General Statutes § 46b-3 (a) provides in relevant part that the "judges of the Superior Court shall appoint such domestic relations officers and other personnel as they deem necessary for the proper operation of the family relations sessions. . . . For the purposes of any investigation . . . the judge . . . may employ the services of any . . . physician, psychologist, psychiatrist or family counselor. . . ."

[5] General Statutes § 46b-6 provides in relevant part that in "any pending family relations matter the court or any judge may cause an investigation . . . which may be helpful or material or relevant to a proper disposition of a case. . . ."

701. The defendant argues that on the basis of *Savage*, the court had no authority to appoint Reddick because the present case is no longer pending. We disagree.

"The court's authority to impose civil contempt penalties arises not from statutory provisions but from the common law. . . . The penalties which may be imposed, therefore, arise from the inherent power of the court to coerce compliance with its orders. In Connecticut, the court has the authority in civil contempt to impose on the contemnor either incarceration or a fine or both." (Citations omitted.) *Papa* v. *New Haven Federation of Teachers*, 186 Conn. 725, 737–38, 444 A.2d 196 (1982).

As explained by our Supreme Court, this court has held that "even in the absence of a finding of contempt, a trial court has broad discretion to make whole any party who has suffered as a result of another party's failure to comply with a court order." (Internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, 260 Conn. 232, 243, 796 A.2d 1164 (2002). The "trial court's continuing jurisdiction to effectuate its prior judgments . . . by summarily ordering compliance with a clear judgment . . . is grounded in its inherent powers . . . ." Id., 246.

We conclude that the precedent relied on by the defendant is inapplicable because the court in the present case did not derive its authority to order Reddick's participation from § 46b-3 or any other statutory provision. In a contempt proceeding, the court has an inherent, *common-law* power to coerce compliance with its judgment. See *Papa* v. *New Haven Federation of Teachers*, supra, 186 Conn. 737. It has equitable powers to fashion whatever orders are required to protect the integrity of its earlier judgment. *Clement* v. *Clement*, 34 Conn. App. 641, 646, 643 A.3d 874 (1994). The defendant

offers no support for a proposition that statutory provisions discussed in *Savage* define or limit the court's inherent contempt power.

We also conclude that the court's order in the present case did not exceed the authority available to it in a civil contempt proceeding. The court ordered the defendant either to deliver the son to the plaintiff or to secure the services of the therapist to effectuate the plaintiff's next scheduled visitation. See *Mays* v. *Mays,* supra, 193 Conn. 266 (punishment in civil proceeding must be conditional or coercive and contemnor must have opportunity to purge himself). The court therefore, in light of the defendant's continuous refusal to comply, properly ordered him to do what it deemed necessary to protect the integrity of the judgment of August 18, 2005. See *Clement* v. *Clement,* supra, 34 Conn. App. 646 (court properly ordered husband to pay wife value of loss where nonpayment of mortgage by husband undermined integrity of court's judgment). The court has authority to order additional measures not contained in the original order if they are necessary to effectuate the original judgment. *Roberts* v. *Roberts,* 32 Conn. App. 465, 471–72, 629 A.2d 1160 (1993) (order to auction property effectuated original judgment although original judgment did not call for sale at auction).

We conclude that the court did not abuse its discretion when it ordered the defendant to secure the services of a family therapist to effect compliance with the court's prior judgment.

## II

### AC 29057

In the second appeal, the defendant claims that the court abused its discretion when, after a compliance review, it ordered him to schedule and pay for a psychological evaluation for himself and the son. We disagree with the defendant.

The following facts are relevant to our resolution of the defendant's claim. The court held a hearing on July 16, 2007, to review compliance with its order from June 6, 2007, that the defendant either deliver the son for the next visitation with the plaintiff or secure Reddick's services to effectuate that visitation. At the hearing, the defendant's counsel informed the court that there still had been no compliance with the order because the son had refused to see Reddick. The court recessed and held a conference in its chambers with counsel for both parties, the guardian ad litem and the attorney for the minor child. After the conference, the court stated on the record that it did not anticipate that the son would refuse to see Reddick, and it ordered the defendant to schedule a psychological evaluation for himself and the son. The court also stated its concern that "the fact that a child would go to such lengths to avoid contact with his mother is not common."

The defendant supports his claim with the same legal argument offered in support of the claim we analyzed in part I C, namely, he argues that the court exceeded the scope of its authority on the basis of *Savage* v. *Savage*, supra, 25 Conn. App. 693. For the reasons explained in part I C, we find this precedent inapplicable.

Applying the standard of review we set forth in part I C and using the same legal analysis, we conclude that the court's order to the defendant to schedule psychological evaluations was yet another attempt to ensure compliance with its original judgment of August 18, 2005. This order is within the scope of the court's inherent power to effectuate compliance with its earlier judgment. See *Papa* v. *New Haven Federation of Teachers*, supra, 186 Conn. 737; *Clement* v. *Clement*, supra, 34 Conn. App. 646; *Roberts* v. *Roberts*, supra, 32 Conn. App. 471–72. It is clear that the purpose of the court's order was to protect the integrity of its earlier judgment

against what it believed to be more than the son's stubborn refusal to see his mother. A trial court has the power even to incarcerate contemnors in civil contempt cases until they purge themselves; see *Mays* v. *Mays*, supra, 193 Conn. 265–66; *Emerick* v. *Emerick*, 28 Conn. App. 794, 797, 613 A.2d 1351, cert. denied, 224 Conn. 915, 617 A.2d 171 (1992); and we see no reason why it should not be able to order a contemnor to undergo a psychological evaluation if that is necessary to enforce the court's earlier judgment.

We therefore conclude that the court did not abuse its discretion in ordering the defendant to schedule psychological evaluations for himself and the son.

The judgments are affirmed.

In this opinion the other judges concurred.