[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife commenced this action for a dissolution of the parties' marriage on the ground of irretrievable breakdown by complaint returnable to this court October 26, 1993. She also sought custody and support of the minor child, alimony and other relief, as on file. The defendant appeared by counsel and filed an answer admitting the allegations of the complaint. He also filed a cross-complaint seeking an annulment on the ground that the plaintiff married the defendant for the sole purpose of `obtaining the right to reside in the United States permanently'. He also sought, in the alternative, a decree of dissolution, custody of the minor child, and other relief.
The plaintiff requested leave to amend her claims for relief by substituting a legal separation in lieu of a dissolution of marriage, to which the defendant timely objected. For some reason, the request and objection had not been acted upon. At the outset of trial, the defendant withdrew his claim for an annulment, and after argument, the court granted the plaintiff's request to amend her claim for relief. The parents were ordered to participate in the Parenting Education Program, 1993 Public Acts, No. 93-319. The parties submitted financial affidavits, written proposed orders and testified.
From the evidence, the court finds the following facts:
The parties intermarried November 8, 1991, in New York, New York. The wife's birth name was Gloria J. Ferrero, CT Page 12357 and she has resided continuously in this state for at least one year before the filing date of the complaint, October 6, 1993. There is one minor child, issue of the marriage, Andrew P. Velez, born December 14, 1992. No other children were born to the wife since the date of the marriage. Neither spouse or the child were recipients of public assistance. All statutory stays have expired.
The wife is 32 years old and in good health. She is a citizen of Columbia and came to the United States in October, 1987, on a visitor's visa, which has expired. She graduated high school and college in Columbia and learned English here. She has secretarial skills and has worked as a bar maid, in a bakery and restaurant and can do home cleaning work; however, until her resident status in the United States is legitimated, she is unable to obtain legal employment, and thus presently has no legal earning capacity. Her mother regularly supplements her child support and alimony ordered pendente lite. She was also awarded sole custody pendente lite of the parties' minor child, subject to the father's reasonable rights of visitation. Commendably, he regularly visits the child and is current on his child support.
The father is also 32 years of age, a high school graduate by GED, and in good health. He too is a native Columbian, came to the United States, became a legal resident alien (obtained a green card), enlisted in the United States Navy, and eventually became a naturalized citizen. He has been in the Navy about seven years; he is now a petty officer (E-5 rank) where he works as a building manager, supervising a cleaning and maintenance crew. At sea, he is a Navy cook. He now earns $504 per week gross (including benefits and allowances); $438 per week net. He claims he will lose certain of these allowances upon dissolution and that his child support should be calculated on a net income of either $338 or $298 per week (post dissolution) depending upon whether he receives `separate rations'. He does not know what his additional cash benefits will be upon a legal separation. The parties have accumulated modest assets.
In his proposed orders he belatedly seeks joint legal custody of the child and primary residence with the mother, with a specific visitation order. The mother disagrees with a joint legal custody order. The child is not represented by counsel. Neither spouse sought appointment of counsel for the child or a CT Page 12358 reference to the Family Services office for investigation and recommendation. Nor, was a motion for joint custody duly made. See General Statutes § 46b-56a(c). Hence, the court declines to consider a joint custodial order.
The parties have enjoyed a trouble-free visitation schedule, and the mother has fostered the father's access with the child. She proposes, while the parties reside in Connecticut, specific, frequent visitation, and when she takes up residence in New York, where she will be near both spouses' family members, that the father have access two weekends per month and other extended access during summer vacations to increase as their son gets older. I find that at this time, her proposal and continued sole custody are in the child's best interests. The father does not dispute that the child should reside with the mother. The parents also agree that it would be best for the child to live with the mother in New York City, where they would have a support network of extended family and friends, and the court approves.
The wife asserts that their marital difficulties arose during a visit from her father-in-law, who belittled her and denied that she had a rightful place in her own home and the family constellation. The husband acknowledges she was a good mother and housekeeper, but claims that her bizarre behavior was the cause of the disintegration of their marriage. It must be noted that his claim on the stand was at variance with the claim he initially made for an annulment. Surprisingly, he attributes no fault to himself.
It is evident that the marriage has broken down irretrievably; on the state of the evidence, considering the demeanor, attitude and credibility of the parties, I cannot find that either party should bear a greater portion of the fault for its destruction.
The plaintiff seeks an order that the defendant sign an `affidavit of support' which she claims she requires, together with his cooperation, to obtain naturalization and/or legal residency status in the United States. In the alternative, she requests an alimony order. The defendant refuses to sign the affidavit or cooperate in the plaintiff's quest, although he did begin to do so prior to the parties' separation. His stated reason is that he no longer wishes to be responsible for her support. He objects to the legal separation CT Page 12359 because he wants out of the marriage to `put this behind him' and `get on with his life'.
He appears not to appreciate the quandary in which this places his wife and child; he does not acknowledge the effects of his failure to cooperate with the wife's citizenship or residency status application, should she be deported, would have on his relationship with his son. He does not consider the effect on the son, an American citizen, if the child were required to reside in Columbia when he has an opportunity to reside here, a priceless right, many risk much for. Nor does he appear to show concern for the impact and effect upon his son were the mother to be deported and separated from the child. His position is illogical and the court infers that his motive can only be spite and vindictiveness.
The wife asserts that a decree of legal separation is appropriate for a number of reasons, including her ability to remain a dependant on his military health insurance without expense, and the additional benefits and income the husband would receive as a married, but legally separated, rather than divorced person. She also urges that this status would enhance her claim for legal residency and naturalization.
The wife provides no authority, statutory or otherwise, and the court could find none, to support the court's power to issue an affirmative order to the husband to cooperate with her quest for legal residency status and to execute the affidavit of support.
"Although created by statute, a dissolution action is essentially equitable in nature." LaCroix v. LaCroix, 189 Conn. 685,689 (1983). I am mindful also that, "It is a well established doctrine that in resolving disputes on the family law docket, trial courts have broad discretion to fashion equitable relief". Oneglia v. Oneglia, 14 Conn. App. 267, 271
(1988). "We have recognized that in some domestic cases unique or compelling circumstance may justify or require equitable relief." Goold v. Goold, 11 Conn. App. 268, 274, cert. denied,204 Conn. 810 (1987). The cases where equitable relief was afforded, however, generally relate to the payment of money or the transfer of title to assets, or the like. The Appellate Court has held, however, that without agreement of the parties, a trial court cannot compel a spouse to sign a joint federal income tax return. See Kane v. Perry, 24 Conn. App. 307 (1991); CT Page 12360 cert. dismissed 226 Conn. 817 (1993).
In a dissolution case where a contemnor was ordered to apply for United States citizenship for an adopted child and disobeyed the order, our Appellate Court has stated, "There are many reasons why such an order may be beyond the power of a court." Tatro v. Tatro, 24 Conn. App. 180, 187 (1991). See also footnote 7, quoting from Zablocki v. Rednail, 434 U.S. 374,98 S.Ct. 673, 54 L.Ed.2d 618 (1978).
As the trial court's order to apply for citizenship was never appealed, the Tatro court, while expressing doubt over its legality, did not consider its legal and factual bases. However, it appears from the discussions in Tatro and Zablocki,
supra, that the order sought here requires more than a change in behavior and implicates status, and the court's power to issue such an order is questionable.
It is unnecessary at this time to attempt to determine whether this court has such power for two reasons. First, the plaintiff in this case has not demonstrated that she is unable to secure legal residency status or naturalization without the cooperation and affidavit of support by her husband. She has not shown that other of her relatives or friends would not be available to assist her. Nor, has she shown that she applied for a waiver of the need for the defendant's affidavit in the light of the United States citizenship of her son.[1]
Accordingly, she has not demonstrated that there are no legal or administrative remedies available to her or that she has exhausted them. Second, the plaintiff also provides no specific actions the defendant must take in order to `cooperate'. This would result in an order both overly broad and vague, and therefore, unenforceable. She also has not shown that she is subject to an immediate threat of deportation. Thus, her claim for affirmative relief must fail.
Under these circumstances, however, she, being legally unable to work, cannot exploit her demonstrated earning capacity and is in need of continued support from the husband.
I also find under the totality of circumstances, that a decree of legal separation is the more fitting and appropriate in this case, as it would provide the wife with free health insurance, may not operate to reduce the husband's income, and be in the child's best interest. It may also enhance the wife's CT Page 12361 claim for legal residency status and provide her some insulation from the threat of deportation.
The court has considered all of the factors in General Statutes §§ 46b-81, 46b-82 and 46b-84 in the light of the evidence and the court's findings, and a decree of legal separation may enter on the ground of irretrievable breakdown, together with the following orders:
(1) Sole custody of the minor child to the mother, reasonable rights of visitation are granted to the father which shall include: Wednesdays, 5 p. m. to 7 p. m.; Fridays for two hours depending on the father's duty schedule; and every Saturday or Sunday for twelve hours. In the event the mother moves to New York City, then his visitation shall include every other weekend from Saturday, 9 a.m. to Sunday 6 p. m. The father shall also have one week in the summer of 1995, two non-consecutive weeks in 1996 and four weeks in 1997, two of which may be consecutive. The father shall have other access as mutually agreed upon.
(2) The father shall pay child support in the amount suggested by the guidelines: $110 per week, to be secured by immediate allotment. The parents' obligation to support the child is subject to 1994 Public Acts, No. 94-61(b). The father shall have the dependency exemption for income tax purposes. A reduction, if any, of father's cash benefits as a result of the decree of legal separation shall be deemed a substantial change in circumstances.
(3) The father shall maintain health insurance through his place of employment for the benefit of the mother and child at his expense. The parties shall equally share any unreimbursed/uncovered health expenses for the child. An order pursuant to General Statutes § 46b-84(c) shall enter.
(4) The defendant shall irrevocably designate the child as beneficiary of his SGLI military life insurance in the amount of $100,000 until the child graduates high school or attains age 19, subject to the provisions of 1994 Public Acts No. 94-61(b), whichever first occurs. In the event he leaves the military, he shall designate his employment related life insurance in its stead. He shall execute and deliver an authorization to the wife so she may determine the status of said policy or policies. CT Page 12362
(5) The defendant shall take, have and own the 1990 Toyota motor vehicle, subject to any encumbrances thereon, which he shall pay and save the wife harmless from, his bank accounts, the personal property now in his possession, his 13" television set, VCR, six-chair dining room table set and his `Nordic Track' exercise equipment.
(6) The wife shall have the tangible personal property now in her possession (excepting the items above set forth).
(7) Each party shall pay the debts shown on Schedule 3 of their respective financial affidavits. The dentist bill to Dr. Simonson in the amount of $2,253 shall be paid equally.
(8) The defendant shall pay to the plaintiff the sum of $35 per week as periodic alimony, taxable to the wife and deductible by the husband. He shall do nothing to obstruct or interfere with her claims for legal residency or naturalization status. Legal residence in the United States or legal employment of the wife shall be deemed a substantial change of circumstances justifying a modification of the alimony award. The alimony award shall terminate upon the death of either party.
(9) The defendant shall pay to the plaintiff on account of her attorney's fees the sum of $1,000, payable in equal weekly payments of $15 per week. The alimony and attorney's fees shall also be secured by immediate allotment.
(10) The parents shall participate in the Parenting Education Program, 1993 Public Acts, No. 93-319.
Teller, J.