[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTIONS FOR CONTEMPT AND MOTIONFOR MODIFICATION OF ALIMONY (NO. 112)
The judgment dissolving this marriage was entered on August 27, 1986 and a written separation agreement was incorporated into the judgment. The court ordered alimony of $1,666 per month for fifteen years or until September 1, 2001. (Freedman, J.). On June 27, 1994, the defendant filed a motion for modification to CT Page 279 decrease the alimony pursuant to § 46b-86 of the General Statutes alleging a substantial change in his circumstances in that his employment had been terminated.
On July 21, 1994, the plaintiff filed motions for contempt alleging a wilful violation of the following court orders: (1) failure to pay periodic alimony of $20,000 a year for fifteen years at $1,666 a month from September 1, 1992 to July 31, 1993 (eleven months) of which the defendant paid one half leaving an arrearage of $9,166.63 for this period; and failure to pay any alimony from August 1, 1993 to December 1, 1994 for an arrearage of $28,332.56 for this period, making a total arrearage of $37,205.82; (2) for failure to pay attorney's fees pursuant to Article 7.3 of their agreement entered into at the time of judgment. In another motion for contempt dated October 13, 1994, the plaintiff alleges violation of the court order that the defendant provide $336,000 of life insurance naming the plaintiff as irrevocable beneficiary pursuant to Article 4.1 of the parties' agreement and requests the court to impose a constructive trust on the defendant's one-half interest in real estate located in Media, Pennsylvania owned by his present wife Sheila Allison.
In Borkowski v. Borkowski, 228 Conn. 729 (C.L.J. March 15, 1994), the court reaffirmed the procedure a trial court must follow before it may modify a previous court order. In short, the court must first decide whether there has been a substantial change in circumstances as to either party pursuant to §46b-86 of the General Statutes. From the testimony of the plaintiff, her financial affidavits and the evidence introduced, the court finds the following facts.
1. On the date of judgment, August 27, 1986, the plaintiff was earning a gross annual salary of about $18,000 and a net of $12,000 annually. She listed expenses at $3,889 a month. The plaintiff also had cash assets of $151,004.13 and debts of $2,000.
2. At the present time, the plaintiff's net salary has more than tripled since the judgment from a $12,000 to about $40,000 a year. Her living expenses have decreased to about $700 a month and her cash assets are about $133,655. She is contributing about $5,500 a year into a 401K pension plan.
3. During the past year, the plaintiff admitted living with a CT Page 280 male friend who was unemployed, and she contributed about $450 a week to assist him.
4. The plaintiff is now fifty-five years old and in good health.
From the above facts, the court concludes that there has been a substantial change in the plaintiff's financial circumstances to modify the alimony pursuant to § 46b-86 of the General Statutes.
Based on the defendant's testimony, his financial affidavit and evidence presented, the court finds the following facts.
1. The defendant has been unemployed since July, 1993.
2. The defendant has been actively seeking employment and through no fault of his own, is unable to find a job.
3. At the time judgment was entered, the defendant's financial affidavit listed a net annual salary of about $56,000, or a net of $1,075.82 a week. He had been employed as an engineer with I.C.I. America. His expenses were $985.35 a month, total assets were $83,161.80 and total liabilities were $1,520.
4. His current net monthly income is $1,810 from a pension he receives from I.C.I. America, and $8.00 of interest income, for a net monthly income of $1,818. His monthly expenses are $3,328 (which includes the alimony award), exceeding his net monthly income by about $1,518. The defendant's assets are now $8,542 and his liabilities are $148,437.69.
5. The defendant is now fifty-six years old and is being treated by a psychiatrist for depression.
Based upon the defendant's testimony and his current financial affidavit, the court finds the change in his circumstances substantial enough to warrant a modification of the alimony order entered at the time of judgment. The court finds his testimony that he has been unemployed for over eighteen months and supported primarily by his present wife credible and probative. The court further finds that the defendant has made a diligent effort to obtain employment during this time but, through no fault of his own, has been unsuccessful.
The defendant also urged the court to declare Article III, CT Page 281 paragraph 3.2(B) void as against public policy based on the plaintiff's cohabitation with an unrelated male since November, 1992. General Statutes § 46b-86(b) gives this court discretion to modify, suspend, reduce or terminate alimony when the court finds that the party receiving alimony is living with another person and the living arrangement alters the financial needs of that party. Lupien v. Lupien, 192 Conn. 443, 444 (1984). In this case the court finds that the unrelated male living with the plaintiff contributes no financial assistance to the plaintiff. In fact, the plaintiff's financial affidavit admits supporting him while he was unemployed. Furthermore, the defendant fails to allege § 46b-86(b) as a ground for modification or termination in his motion; therefore, this court has no authority to modify or terminate on that ground. Connollyv. Connolly, 191 Conn. 468, 474, 475. Furthermore, since the court has found that there has been a substantial change in the financial circumstances of both parties under § 46b-86(a), the issue of cohabitation under § 46b-86(b) is moot.
Since the court has found a substantial change in circumstances of both parties since the date of judgment, it must now consider the statutory criteria of § 46b-82, the alimony statute, and enter an alimony award that is fair under the present circumstances. After considering the statutory criteria, the evidence introduced and the case law, the court grants the defendant's motion for modification of alimony and orders a reduction in the alimony order to $1.00 a year.
The court orders the defendant to file a copy of his annual income tax return with the plaintiff until September 1, 2001, the termination date of the original alimony order. The defendant is further ordered to provide an affidavit of income or earnings when he obtains employment, either in private industry or as a consultant.
The defendant alleged the equitable defenses of laches, waiver and equitable estoppel as to the alimony arrearages. He argues that plaintiff's failure to move for contempt until the motion for modification was filed July 18, 1994 now precludes her from claiming the alimony arrearage. The defendant also claims the plaintiff, by accepting about one-half of the alimony as ordered and then receiving no alimony, waived her alimony rights.
The defenses of laches, equitable estoppel and waiver do not apply to the facts found in this case. Laches consists of an CT Page 282 inexcusable delay and it results in prejudice or change of position to the other party. Equitable estoppel requires one party to do or say something to the other to induce the other to believe in those facts and the other party acts on that belief. In Papcun v. Papcun, 181 Conn. 618, 620, 621, the Supreme Court overruled the defenses of laches and equitable estoppel in sustaining a nine year arrearage of alimony and child support.
The court finds that the plaintiff's delay of about two years did not cause the defendant to change his position or prejudice him in any way, and while the plaintiff accepted partial payments of $860 from the $1,666.66 monthly alimony order, she refused to sign a letter prepared by the defendant acknowledging a reduction or waiver of alimony. (Plaintiff's exhibit 8.). The defendant testified that he was willing to pay the court ordered alimony when he resumed employment. Based on the testimony and evidence presented, the court finds that the plaintiff did not knowingly, intentionally and voluntarily waive her alimony rights. Court orders must be followed until they have been modified or successfully challenged. Connecticut National Bank v. InvestorsCapital Corp., 29 Conn. App. 48, 56 (1992. The parties cannot unilaterally modify or change court orders. Lownds v. Lownds,41 Conn. Sup. 100, 105 (1988).
Based on all the evidence, the court finds the defendant in arrears on the alimony payment as of June 27, 1994, the date the motion for modification was filed, in the amount of $27,206.61, computed as follows:
Arrearage from 9/1/92 to 8/1/93 Paid $860 a month Owing $806.66 a month for 11 months or $ 8,873.27 Arrearage from 8/1/93 to 7/1/94 $1,666.66 a month for 11 months or 18,333.34 ----------- Total $27,206.61
The court orders the defendant to pay the plaintiff $500 a month on the arrearage beginning February 1, 1995, until it is paid in full or modified after the defendant obtains employment.
The inability of the defendant to obey an order of the court, without fault on his part, is a good defense in a charge of contempt. Tobey v. Tobey, 165 Conn. 742, 746; Turgeon v. Turgeon,190 Conn. 269, 282. Based on all the testimony and the evidence, CT Page 283 the court does not find the defendant in wilful contempt of the alimony order; therefore, the plaintiff's motion for contempt is denied. The defendant has been unemployed for the past eighteen months through no fault of his own and his only income is $1,810 a month from a pension.
The plaintiff urges the court to order the defendant to pay her reasonable legal fees of $9,972.23 incurred on the contempt motion. She bases her claim on paragraph 7.3 of the parties' separation agreement dated August 27, 1986, which provides that the offending party pay legal fees for breaching said agreement and on Goold v. Goold, 11 Conn. App. 289 (1987) in which the attorney fees were awarded.
The court finds the defendant was unable to pay the alimony order because of his unemployment; therefore, he did not wilfully and intentionally violate the agreement. The facts in this case are distinguishable from those in Goold, supra. The court finds the defendant has limited liquid assets of $3,042 and the plaintiff over $133,000 as listed on their financial affidavits. After considering the agreement and the statutory criteria of § 46b-62 and § 46b-82 of the General Statutes, the court denies the plaintiff's claim for legal fees.
At the time of judgment, the defendant was ordered to maintain a life insurance policy of $336,000 naming the plaintiff as irrevocable beneficiary. The defendant testified that this policy expired about two years ago for nonpayment of the premiums. The court does not find him in wilful contempt but that he was financially unable to afford the premiums for that amount of insurance. However, the defendant did not have the right to allow the policy to expire without this court modifying the insurance order. Therefore, the court orders the defendant to name the plaintiff as irrevocable beneficiary for $30,000 on his current life insurance policy held by Kemper Life Insurance to secure the arrearage award and file a copy of the change of beneficiary with the plaintiff by February 10, 1995.
The fourth contempt alleges that the defendant fraudulently conveyed to his present wife, Sheila Allison, a one-half interest in their marital home in Media, Pennsylvania in June, 1994. There was considerable testimony introduced by the plaintiff urging the court to impose a constructive trust of the defendant's one-half interest on any proceeds realized from any future sale. The defendant denied any intent to defraud the plaintiff and claimed CT Page 284 the transfer was made pursuant to a prenuptial agreement made with his present wife but admitted he conveyed his interest to her.
The defendant's present wife is not a party to this action. The title to this Pennsylvania real estate vested in the defendant and his present wife after judgment was entered on August 27, 1986. There were no orders entered nor could they have been entered as to this real estate. Ivey v. Ivey, 183 Conn. 490, 452 (1991).
 The authority of a court to find a party in contempt is founded in the court's need to have the ability to coerce compliance with its orders. Tufano v. Tufano, 18 Conn. App. 199, 125, 556 A.2d 1036 (1989). "The inability of a contemnor to obey a court order through no fault of [his] own is a defense to a claim of contempt. . . . In other words, the act for which the penalty was imposed cannot constitute contempt if the actor was unable to obey the order." Citations omitted. Tatro v. Tatro, 24 Conn. App. 180, 186, 587 A.2d 154 (1991). The underlying assumption of such analysis is that a prior order exists on which to base a finding of contempt. Thus, if no prior court order exists, an actor cannot obey it, and, therefore, the trial court cannot hold the actor in contempt for noncompliance with a nonexisting order.
Calway v. Calway, 26 Conn. App. 737, 743, 744.
This court lacks both in personam and subject matter jurisdiction relative to this real estate; therefore, the motion is denied.
ROMEO G. PETRONI, JUDGE