[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife was married to the defendant husband on June 19, 1959, in Fredericksburg, Virginia. Both of the parties have resided continuously in the State of Connecticut for at least one year up to the date of filing the CT Page 9121 complaint.
No children have been born to the wife, or adopted by either party, which are presently minors.
From the evidence presented, the Court finds that the marriage has broken down irretrievably, there is no prospect of reconciliation, and a decree of dissolution may enter.
This is a marriage of 32 years. In August 1988, the husband left the marital premises but returned periodically, although he was living with another woman.
The wife is forty-nine years of age, with little or no skills for today's marketplace. She married the defendant when she was 16 years of age and was unable to finish her high School education. She was 17 when her first child was born. For approximately 30 years of the marriage, her principal job was as a homemaker, which from all indications, she did well. The defendant husband provided well for the family and as a result, a high degree of financial security was attained.
It wasn't until 1988 that the wife attempted to find a job. She testified that she filed many applications, however, except for her present employment was unsuccessful in obtaining any jobs. She presently works in a bakery for about 15 hours a week at an hourly rate of $4.25.
The wife alleges that her husband physically and mentally abused her during the marriage. The husband denies these allegations although he does admit that he was provoked on several occasions to put his hands on her.
There is no question, in the Court's opinion, that the husband was the dominant and domineering personality in this marriage. There is equally no doubt that the husband's behavior, both in his treatment of his wife, and in his adulterous dalliance, was the major cause of the breakdown.
The husband is forty-three years old and has a high school education. He married the plaintiff when he was 20 years of age. He admits slapping his wife with an open hand and shaking her. He claims, however, that this was done to have her stop her hysterical screaming. The Court is unimpressed with his explanation of those events finding such behavior unjustified under any circumstance.
To his credit, he has been very generous and hardworking throughout the marriage. CT Page 9122
During the past three years, the wife was given access to CDs worth approximately $40,000, the income from the mortgage and the cash which was in the mortgage account. In addition, he has paid court-ordered alimony. By his calculation (unsubstantiated by physical evidence), he claims to have given the wife $77,000 for the years 1988 through 1991. This figure is in addition to the CDs and mortgage checking account. The Court is aware that $16,000 of the money in the CDs was used as a down payment on their son's condominium.
The wife testified that she also cashed in a $5,000 IRA which was in her name.
The husband's present salary is $75,000. The present value of his Savings and Stock Investment Plan is $212,313.54. He also has a retirement plan which has a present value of $43,000. The projected monthly income is $1,061 if retirement occurs at age 65 and $796 if retirement occurs at age 55.
The Court finds the value of the marital home to be $165,000.
The wife's health is good. She has testified that she is not either physically nor psychologically unable to work. Similarly, although the husband has high blood pressure and asbestosis, he also is not impaired in his ability to work.
When making an award of alimony or the assignment of property, the Court is directed by the legislature to consider the following factors: ". . . the length of the marriage, the causes for the dissolution, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of the parties."
The factors to be considered in awarding alimony and making property distributions under the present statutes closely parallel those under former case law. Tobey v. Tobey,165 Conn. 742, 748 (footnote 2) (1974); Heard v. Heard,116 Conn. 632, 636 (1933). No one factor is controlling. The relevant considerations vary from case to case and depend upon the circumstances of the parties. Chambers v. Chambers,171 Conn. 278, 279 (1976).
The plaintiff wife appears to be urging the Court to give significant weight to the cause of the breakdown. However, alimony should not be awarded as a reward to a spouse for virtue or as punishment for wrongdoing. Even under our old CT Page 9123 divorce laws based on fault, our Supreme Court has consistently held that ". . . (t)he primary basis for an award of alimony has been not to punish a guilty spouse but to continue the duty to support the other. . . ." Tobey v. Tobey, (supra) at page 748; Cary v. Cary, 112 Conn. 259 (1931). It follows that the primary consideration in awarding alimony is "to provide nourishment, sustenance and the necessities of life to a former spouse who has neither the resources nor the ability to be self sustaining." Lefler v. Lefler, 244 So.2d 112, 113-114
(Fla.App. 1972).
Having carefully considered all of the evidence presented and the provisions of Connecticut General Statutes Sections 46b-81 and 46b-82, the Court further orders as follows:
(1) All of the husband's right, title and interest in the marital property located at 2 Charter Oak, East Lyme, Connecticut, is assigned to the wife. She shall be responsible for the payment of all real estate taxes, insurance and all other expenses incurred by virtue of ownership of said premises.
(2) The husband shall pay to the wife, as periodic alimony, the sum of $325 per week which sum shall be secured by an immediate wage garnishment. Said alimony shall be nonmodifiable as to term and shall terminate upon the happening of the first of the following events:
(a) Death of either party;
(b) Remarriage by the wife;
(c) Cohabitation by the wife.
(3) The husband shall make available, through his employment, to the extent provided by law, whatever medical benefits are available for the benefit of the wife. She shall be responsible for the payment of the premiums.
(4) The husband shall name his wife as irrevocable beneficiary on his Prudential Life Insurance policy to the extent of $50,000, for so long as he is required to pay alimony. He may not encumber said policy.
(5) The husband shall assign to his wife one-half of any death benefit available through his pension plan.
(6) All of the personal property, furniture, etcetera, located at the marital home shall become the sole CT Page 9124 and exclusive property of the wife with the exception of any personal clothes and documents which are the property of the husband.
(7) The husband shall transfer and assign all of his right, title and interest in E.B. Credit Union CD to the wife as well as his interest in any U.S. Government bonds.
(8) The husband shall assign all of his right, title and interest in the mortgage on the Newport News, Virginia, property to his wife.
(9) The wife shall retain sole and exclusive ownership in her own IRA.
(10) The husband shall, as a property settlement, pay to the wife within ninety (90) days, the sum of $7,500.
(11) The husband shall retain as his own, all of the right, title and interest in his SSIP.
MIHALAKOS, JUDGE