[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff husband commenced this dissolution action on September 20, 1990. The parties were married at Carcasonne, France on August 28, 1950. Both of the parties have resided continuously in the State of Connecticut for at least one year prior to the commencement of this action.
There has been one child born, issue of the marriage. That child is now an adult. About two years ago the parties went into separate bedrooms, and during the latter part of January of this year the wife left the marital home. The husband now resides in the marital home alone.
The husband is sixty-four (64) years of age and in fair health. He testified that he was diagnosed as a diabetic in 1960. In addiction, he suffers from chronic back discomfort and arthritis. He claims that he has heel spurs and that his fingers are deformed.
The wife is sixty-six (66) years old and also in fair CT Page 6270 health. In 1974, she underwent breast surgery for cancer. There has been no apparent recurrence. She also suffers from anxiety attacks which she attributes to her husband. She also has high blood pressure.
In spite of the somewhat acrimonious nature of some of their testimony, the parties were able to agree on certain matters. Both of the parties entered into marriage almost forty-two (42) years ago with very few assets. They also agree that all of the assets were earned by the husband and that the wife was not expected to earn a living. Her function was to provide a home and to take care of the child during his minority. The wife also agrees that the husband worked very hard, and many hours, and was a good and generous provider. Very little of what she wanted was ever refused. There is also agreement that the husband drank excessively during the marriage and is all alcoholic. He now claims to be a recovering alcoholic and attends A.A. meetings. The wife does not believe that he has come to grips with his alcoholism.
A great deal of testimony was elicited relative to the cause of the breakdown of the marriage.
The husband admits that he is argumentative at times and that many years ago he may have slapped his wife. He also admits that there have been many arguments most of which revolved around his son and his wife's sister. He also claims that his wife has unjustly accused him of infidelity. He testified that a void was created in his life when he sold two of his restaurants in 1984. People no longer called on him, he became lonely and turned to alcohol. In 1986, he put himself into a rehabilitation facility. He claims that his wife only visited him once in the twenty-eight (28) days of commitment. In 1990 or 1991, he returned to alcohol. His mother had died and his son quit the restaurant. He admits an inability to cope with his alcoholism. It is a difficult problem for him.
The wife has twice commenced divorce proceedings against her husband. She testified that distressed and depressed by her husband's failure to deal with his alcoholism, she has enrolled in ALANON in an effort to gain some self-respect. She believes that she has contributed absolutely nothing to the breakdown of the marriage. She claims that her husband is entirely at fault.
She claims that he was abusive and called her filthy names, and on one occasion told her that it would give him pleasure to beat her up. And, finally, she testified to CT Page 6271 several affairs she claims her husband had with others. The court does not find the latter claim convincing. However, there is no doubt that the overwhelming cause of the breakdown was the husband's behavior toward the wife.
In any event, fault is only one of the factors the court considers in the award of alimony and in the assignment and distribution of property. Our Supreme Court has stated:
 "To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes, Sec. 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 62 (1970). `This court has reiterated time and again that awards of financial settlements ancillary to a marital dissolution rest in the sound discretion of the trial court.' [Citation omitted.] Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisition of assets of each of the parties; [citation omitted]; no single criterion is preferred over all the others. In weighing the factors in a given case the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations the financial circumstances, both actual and potential, are entitled to great weight."
Valante v. Valante, 180 Conn. 528, 530 (1980).
Those factors to be considered in awarding alimony and making property distributions under the current statutes closely parallel those under former case law. Tobey v. Tobey, 165 Conn. 742, 748 n. 2 (1974); Heard v. Heard,116 Conn. 632, 636 (1933). No one factor is controlling. The relevant considerations vary from case to case and depend upon the circumstances of the parties. Chambliss v. Chambliss, 171 Conn. 278, 279 (1976).
A great deal of the testimony was also awarded to the valuation of the assets. On September 12, 1946, the husband came to the United States and was later joined here in 1950 by his wife. The court need not ritualistically recite where the parties resided, what restaurants were purchased (and CT Page 6272 sold) and the price paid for these acquisitions. Suffice it to say that the husband was extremely successful and the parties have managed to acquire substantial assets.
The court believes the testimony of Ronald Glendinning, a real estate appraiser, and attributes to the marital home a value of approximately 1.5 million dollars. The court did not find the testimony of Matthew Niden convincing.
The court, on the basis of the plaintiff's own testimony, finds that the restaurant business has a value of $800,000 which includes the wine.
The parties have stipulated and the court accepts the restaurant real estate valuation of $975,000.
By agreement of the parties, the court further finds the following valuations:
a. Bank of New York $ 26,000.00
b. Swiss Account 200,000.00
c. Putnam Trust 3,000.00
d. Dillon Account 926,000.00
e. Caravelle Pension 474,000.00
f. Cremaillere Pension 307,000.00
The court is also aware that during the course of these proceedings, the wife took $50,000 out of an account and cashed in several policies of life insurance.
The court is equally aware that the wife never received any of the restaurant rental even though she was an equal owner of this real estate.
The court has taken under consideration all of these factors mandated by Connecticut General Statutes, Sec. 46b-81
and Sec. 46b-82, and all of the testimony presented to it. It, accordingly, orders as follows:
1. The marriage has broken down irretrievably, there is no prospect of any reconciliation and a decree of dissolution may enter.
2. By judicial decree, the marital premises located CT Page 6273 at 284 Redding Road are granted to the wife. She shall be responsible for the payment of the mortgage and shall hold the husband harmless therefrom.
3. All of the household furnishings, with the exception of the husband's personal belongings, shall become the sole and exclusive property of the wife.
4. The wife shall transfer to the husband all of her right, title and interest in La Cremaillere to the husband.
5. Each of the parties shall retain their own interest in the La Cremaillere real estate.
6. The following assets shall become the sole and exclusive property of the husband and the wife shall execute any and all documents necessary to effect said transfer:
a. Bank of New York Account
b. Swill Account
c. Putnam Trust
d. Caravelle Pension
e. Cremaillere Pension
f. Husband's Inheritance
7. The Dillon account shall be divided 60 percent to the wife and 40 percent to the husband.
8. The husband shall, at his own expense, continue to provide medical insurance, similar to the coverage existing at the date of the divorce, for the benefit of the wife, for so long as he owns a majority interest in La Cremaillere Restaurant Corporation.
9. The husband shall pay, as periodic alimony to the wife, the sum of $600 per week until the happening of the following events:
1) death of either party;
2) remarriage by the wife;
 3) when the husband no longer has a majority interest in LaCremaillere Restaurant Corporation.
CT Page 6274
10. Except as otherwise provided in this decree, all of the property in the name of either party shall remain the sole and exclusive property of said party.
11. Each of the parties shall be responsible for his or her own attorney's fees or costs.
Mihalakos, J.