[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff (hereinafter the "husband") and the defendant (hereinafter the "wife") were married in Old Saybrook, Connecticut, on May 30, 1987. The husband has been a resident of this state for at least one year prior to the filing of the complaint; therefore, the court has jurisdiction. The parties have one minor child issue of the marriage, a daughter, Victoria Persichilli, born October 31, 1987, who is now six years of age.
The parties had planned to be married on Labor Day, 1987. but in the early part of 1987, the wife told the husband she was pregnant. Knowing this, the parties agreed to advance the wedding date to Memorial Day, May 30th, 1987.
The parties separated in October, 1991, and have lived apart for over two years. The evidence clearly demonstrates that this marriage has irretrievably broken down with no hope of reconciliation, therefore, judgment may enter dissolving the marriage on that ground. (Section 46b-40(c)(1) of the General Statutes.)
While the trial was in progress, the parties signed an agreement as to custody and visitation for the minor child. This agreement, dated December 10, 1993, is incorporated by reference in the judgment as an order of this court. The father shall pay child support of $100.00 per week payable on Friday of each week commencing January 7, 1994, which amount is in compliance with the Child Support Guidelines.
The husband, age 43, is presently employed as a licensed journeyman electrician at an hourly wage. During part of the marriage, he owned an electrical business and held a master electrician license. He held two jobs during most of the marriage and sometimes worked sixty hours a week. He completed four years of vocational school and one year of college. He has worked over twenty years as an electrician.
The wife, age 40, was a homemaker and mother during this six year marriage while the husband was the breadwinner. Prior to the marriage, the wife worked as a hairdresser and has some CT Page 11422 experience with electrolysis. For a short time, she was a partner in a hairdressing business but gave it up when she married in 1987. From June to September, 1991, she worked as a clerk in her husband's liquor store which he purchased in June, 1991. After leaving that job, she worked as a part-time secretary for the Town of Shelton earning $6.50 an hour. During the past two years, she has not been able to find a job and has devoted full time to maintaining the home and caring for the child. She has filed applications with different retail stores to obtain employment. The wife is a high school graduate. Both parties stated they are in good health at this time.
The first issue the court will address is the validity of a prenuptial agreement that the parties signed on May 29, 1987, a day before their marriage. (Plaintiff's exhibit A.) The husband testified that he discussed the general concept of keeping all assets acquired prior to that time with the wife about a year before the marriage and also after they were engaged in December, 1986. Because his previous marriage had failed, he wanted these assets protected to benefit his 20 year old son.
In April, 1987, the husband asked his attorney, Donald A. Hendrie, Jr., to draft this prenuptial agreement, it was sent to him about a month later. The husband testified that he gave the agreement to his wife in May, 1987, about ten days prior to the wedding date suggesting she have her own lawyer review it with her. The wife testified that she did not know any lawyer and did not see one. She and her family were busy getting ready for the wedding. They had invited about 150 guests.
The parties had dated for six years before the marriage. Neither the wife nor her mother understood why such an agreement was necessary, and the wife says she was reluctant to sign it. Nonetheless, the husband made an appointment for both of them to see his attorney on May 29, 1987. In the presence of his attorney and two other witnesses, the husband signed the prenuptial agreement the morning of May 29. The husband's attorney then arranged for the wife to consult with another attorney in the building, Attorney Michael Meyers, a specialist in matrimonial matters. Attorney Hendrie had previously referred clients to Attorney Meyers.
Attorney Meyers testified he had a vague recollection of meeting with the wife in his office for about fifteen minutes the morning of the 29th. He did not open a file nor charge her for the CT Page 11423 conference. He would not represent her on such short notice. He may even have suggested that she not sign the agreement a day before the wedding.
The wife returned with the agreement unsigned to Attorney Hendrie's office and told her husband what had happened at Attorney Meyer's office. The wife testified that they went into a hallway outside Attorney Hendrie's office and the husband told her the wedding would be cancelled unless she signed the agreement that morning. The wife immediately returned to Attorney Meyer's office and signed the agreement before his secretary and paralegal clerk, who acknowledged her signature. She then returned the signed agreement to her husband. It is undisputed that the husband's attorney prepared this 18 page prenuptial agreement and that the wife was not represented by an attorney when she signed it. The wife testified she did not know what the agreement meant. She vaguely recalled reading some of it.
The agreement listed the wife's assets on one page, which consisted of her jewelry, china, silverware and personal effects, and some wedding gifts. His attorney estimated the value to be between $15,000.00 and $20,000.00 for these items. On the other hand, the husband's assets were described in 15 pages on exhibit B of the agreement. This list described two parcels of real estate, an electrical business, bank accounts, limited partnerships and other assets valued at $420,000.00.
The court found the wife's testimony credible and responsive. She had no previous experience with legal matters nor with a lawyer. She was under extreme emotional stress after her husband told her the marriage would be cancelled unless she signed the prenuptial agreement that morning. She was about four months pregnant at that time. The court further finds the husband's threat to cancel the wedding was the pervading cause for her signing it. She did not sign this agreement voluntarily.
It is elementary contract law that a person must freely and voluntarily consent to signing such an agreement to be bound by it. McCarthy v. Taniska, 84 Conn. 377, 381 (1911). The wife signed this agreement under duress, therefore, the court holds it to be invalid and unenforceable. Lownds v. Lownds, 41 Conn. Sup. 100, at page 108 (1988). A contract is not valid if one party is put in fear by the other party for the purpose of obtaining an advantage. McCarthy v. Taniska, supra. Under the circumstances existing at the time this agreement was signed, the wife would have CT Page 11424 signed anything the husband wanted in order to have the marriage take place the next day.
Based on this finding, the court finds it unnecessary to further examine the agreement under the criteria outlined by our Supreme Court in McHugh v. McHugh, 181 Conn. 482 (1980), relative to prenuptial agreements. The court must point out, however, that in McHugh, supra, the Supreme Court clearly stated that any waiver of marital rights, statutory or common law, must be voluntarily and intelligently made to be valid. And when the party is not represented by an attorney, as was the case here, the validity of any prenuptial agreement would be subject to challenge.
The wife also testified she suffered serious medical problems after giving birth to Victoria that required her to have two surgical operations. She was unable to walk at times, and would have to remain in bed. The husband accused her of being lazy and a hypochondriac. On one occasion in 1989, while she was holding Victoria in her arms, the husband struck her from behind, breaking a door and injuring the wife. The wife obtained a restraining order from this court. Subsequently, she and the child moved to live with her mother in Yonkers, New York. The wife then filed for a divorce. The parties later reconciled and the action was withdrawn. However, the husband then prepared a list of demands for the wife to follow, and continued to verbally and emotionally abuse her.
The court finds that the husband was primarily at fault for the breakdown of the marriage.
Fault, however, is only one of twelve factors which the court must consider in awarding alimony, pursuant to 46b-82 of the Connecticut General Statutes, or in making property distributions under 46b-81. The primary basis for an award of alimony is to continue the duty to support a spouse and not to punish the other. It is awarded to provide nourishment, sustenance and the necessities of life to a former spouse who has neither the resources nor the ability to be self-sustaining. Tobey v. Tobey,165 Conn. 742, 748 (1974). The present needs of each party must be considered.
The wife's financial affidavit reflects that she is presently unemployed. Her only income for the past year is the $140.00 a week temporary alimony and child support ordered pendente lite. She has no tangible or liquid assets. The marital home is CT Page 11425 being foreclosed by the Dime Savings Bank. She and her six year old daughter are about to be homeless. The 1983 Oldsmobile Cutlass, which the husband has left for her use, is often inoperable.
The husband's financial affidavit lists three parcels of real estate. The marital home has a negative equity of $10,000.00, and two rental properties have equity of $58,000.00 and are earning some income for him. His total assets are listed at $75,850.00.
The liquor store business, which was acquired in 1991, was to be sold on December 12, 1993. The husband's attorney agreed to hold in escrow $35,000.00 from this sale until the court rendered a judgment in this case. An attached affidavit shows $22,000.00 is owed to the husband as well as $13,000.00 of credit card debt by this liquor business. The husband also listed a debt of $16,500.00 owed to his parents for a loan used to purchase the liquor business in June, 1991.
The husband's affidavit showed net weekly wages of $238.00 a week and gross other weekly income of $631.00 and deductions of $566.00 giving him a net weekly income of $303.00.
After considering all of the testimony and evidence, the court finds the husband's present net weekly income is closer to $450.00.
The husband has the ability to earn more income. He presently works thirty-five hours a week. A weak economy in the construction field was the primary cause for a decrease in his earnings. Previously, he operated an electrical business and worked a second job. He worked six days a week for over sixty hours. With the economy improving, he is capable of earning more doing part-time electrical work above his regular job. He holds both a masters and a journeyman electrician licenses and has operated an electrical business successfully. He is a skilled tradesman with proven ability in the past.
On the other hand, the wife has cared primarily for their daughter and the marital home during the marriage. She has, however, worked part-time as a secretary and in the husband's liquor store. Prior to the marriage, she was a hairdresser. The wife should be capable of obtaining employment within the next five years as the daughter will be in elementary school. However, the wife needs to find housing and obtain reliable transportation in CT Page 11426 the immediate future.
The court has listened to the witnesses and reviewed all the exhibits in the case. In addition, the court has taken into consideration all of the criteria set forth in 46b-81, the assignment of property and transfer of title statute, 46b-82, the alimony statute, and 46b-62, the attorney's fees statute. The court has considered all of the evidence and reviewed the parties' claims for relief as well as their financial affidavits in rendering its decision. Accordingly, the court orders as follows:
1. The husband shall pay the wife periodic alimony of $100.00 per week commencing Friday, January 7, 1994 and each Friday thereafter, until the earliest to occur of the following events: five years from the date of judgment, the death of either party, or the wife's remarriage or statutory cohabitation pursuant to 46b-86(b) of the Connecticut General Statutes. Such alimony shall not be nonmodifiable as to term.
2. The husband shall immediately transfer title of the 1983 Oldsmobile Cutlass to the wife and register the automobile in her name with the Department of Motor Vehicles and pay the costs relative thereto.
3. The husband shall maintain medical insurance for the benefit of the minor child until his obligation for support ceases. Any unreimbursed medical expenses shall be shared two-thirds by the husband and one-third by the wife. The provisions of 46b-84(c) of the General Statutes shall apply.
4. The husband shall maintain a life insurance policy of $60,000.00 and name the minor child as irrevocable beneficiary until his obligation for support ceases. Proof of such insurance shall be provided to the wife on a yearly basis.
5. The husband shall cooperate with the wife in her obtaining medical insurance under his coverage for three years. The husband shall pay the premiums for one year following the date of this judgment and the wife shall be responsible for payment of the premiums for the remaining two years.
6. The wife shall quitclaim her one-half interest in the marital home located at 65 Poplar Road, Shelton, Connecticut, to the husband, which is presently being foreclosed by The Dimes Savings Bank of New York. The court finds that the CT Page 11427 outstanding debt as of December 6, 1993 is $164,409.96 (plaintiff's exhibit D) and the current market value as of October 5, 1993 is $155,000.00 (plaintiff's exhibit C). The husband shall indemnify and hold the wife harmless from any and all liability relative to this mortgage or any other obligations relative to this real estate. The wife shall vacate the premises within sixty (60) days of this judgment, and the husband shall be liable for all the expenses for maintaining the marital home during this sixty day period. The husband and wife shall cooperate with one another to insure a smooth transition. Should any disputes develop, they are to return to Family Relations for mediation. If Family Relations cannot resolve the issues, the parties are to return to court.
7. The wife shall have title to all of the contents and personal property on the premises at 65 Poplar Drive, Shelton, Connecticut, except for the husband's personal clothing, personal effects and tools, which he shall remove from said premises within thirty (30) days of the date of this decision. Should there be a disagreement as to the husband's personal clothing, personal effects or tools, the parties shall seek the aid of the Family Relations office and if unable to reach an agreement, they are to return to court.
8. The parties shall divide equally the proceeds of approximately $3,200.00 being held in a tax refund escrow account and also divide equally tax refunds, if any, due the parties for their 1992 and 1993 federal or state income tax returns.
9. The husband shall pay as lump sum alimony the sum of $30,000.00 pursuant to 46b-81 (assignment of property statute) of the General Statutes, payable as follows:
 (a) the sum of $15,000.00 shall be paid immediately from the, sale proceeds of the husband's liquor business;
 (b) the remaining $15,000.00 shall be paid in three (3) annual payments of $5,000.00 each year, the first installment due on January 2, 1995, the second installment due on January 2, 1996 and the third and final installment due January 2, 1997, and shall be secured by a note and mortgage in the amount of $15,000.00 on the husband's rental properties located at 59 Providence Avenue and 66 Wooster Street, Shelton, CT Page 11428 Connecticut. The note and mortgage shall be prepared by ounsel [counsel] for the wife and the defendant and his counsel shall cooperate fully.
10. The husband shall also pay from the proceeds held in escrow from the liquor store sale the hospital bill of $2,400.00 owed Yale Medical School and listed on the wife's financial affidavit.
11. The husband's financial affidavit lists assets consisting of two parcels of rental real estate at 59 Providence Avenue and 86 Wooster Street in Shelton, Connecticut, IRAs having a total equity of $58,000.00, two IRAs valued at $12,600.00 and two limited partnerships valued at $4,850.00, a 1984 Chevrolet van and a 1973 Pontiac convertible valued at $1,800.00. These remaining assets listed on his financial affidavit shall belong exclusively to the husband since they were acquired prior to the marriage primarily by his own efforts. Rummel v. Rummel, 33 Conn. App. 214 at page 223, Conn. Law Journal, December 14, 1993.
12. Each party shall be responsible for any remaining debts or liabilities listed on their respective affidavits.
13. Each party shall be responsible for his or her own counsel fees.
ROMEO G. PETRONI, JUDGE