[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This lawsuit first came to this Court by a complaint dated CT Page 3838 December 30, 1996 and returnable January 14, 1997 seeking a dissolution of the marriage, a fair and equitable division of personal property and such other relief as in equity appertains.
The Defendant appeared by counsel on January 27, 1997.
On February 25, 1997 a motion to enjoin and a motion for exclusive possession were filed by the Plaintiff and acted on by the Court, Hurley, J. and Solomon, J. Another motion regarding a job search was filed on February 27, 1997, but was not acted upon.
On February 27, 1997, the Defendant filed an answer to the complaint and a cross complaint.
The cross complaint requested a dissolution of marriage, alimony, an allocation of debt, a division of personal property, an allowance to defend and other fair and equitable relief
The Defendant, on February 27, 1997, filed a motion for an accounting, which was granted by Hurley, J., based on a stipulation.
The Defendant, on February 27, 1997, filed a motion for alimony and other relief, which was acted on by the Court, Solomon, J., granting alimony pendente lite of $320.00 weekly, plus $40.00 on a determined arrearage.
On April 14, 1997, the Defendant filed a motion for contempt, but the same was never acted on.
On June 13, 1997, the Plaintiff was granted exclusive possession of the residence at 149 Geer Road, Griswold by the Court, Solomon, J.
On June 13, 1997, attorney's fees of $1,000.00 were allowed for the Defendant from the Plaintiff and the parties were directed to cooperate to list the marital residence for sale.
On December 15, 1997, the Defendant filed a motion to compel which the Court, Solomon, J., granted requiring the Plaintiff to provide an updated business ledger for 1997 to Defendant's counsel.
Various financial affidavits had been filed incident to the CT Page 3839 foregoing motions.
The matter came on for hearing by the Court on February 24, 1998.
The Plaintiff and his counsel were present throughout.
The Defendant and his counsel were present throughout.
The Court makes the following findings of fact.
This is the second marriage for both the Plaintiff and the Defendant. Both the Plaintiff and the Defendant had children in the first marital union.
The Plaintiff was born in the United States.
Plaintiff served in the United States Air Force between 1964 and 1969.
Plaintiff's work history consists of work at the government space center in New Jersey, work at Electric Boat, work at R.C.A. Sound Laboratories, and at the Bentley Co. from London, England for ten years.
Plaintiff has attended an institute for education as an engineer.
Plaintiff is now self-employed.
Plaintiff had a pension fund while working for Bentley which she cashed in.
Plaintiff works serving the textile industry in electronics for textile machines.
Seventy percent of Plaintiff's work is in New York.
On occasion, Plaintiff travels overseas incident to his work and for certain time periods only spent weekends in Connecticut.
When first married, the Defendant was working at her former husband's restaurant.
There was one child issue of this marital union who is now CT Page 3840 age 21.
During the marriage, children of both the Plaintiff and Defendant by their prior unions resided with them.
Plaintiff and Defendant lived together for one year before they were married.
When the parties were first married, the Plaintiff arranged to open a clothing store for the Defendant, which the Defendant managed, but it failed and was closed.
At one point in the marriage, the Defendant worked for a trucking company.
The textile industry in this country has suffered some decline in the last few years.
Plaintiff sent the Defendant to school to learn computer skills and purchased a computer for her.
The parties separated in January 1997.
The Defendant incurred many credit card charges for a service known as QVC, which was incident to her use of the computer.
See Plaintiff's Exhibit 1.
Defendant was at the computer for long periods of time on many days.
In January 1997 when the Defendant vacated the home residence, she removed most of the contents thereof.
The residence contained 4800 square feet and had two bathrooms.
After the Defendant's departure, the Plaintiff continued to reside in the residence and for awhile his son and the son's wife lived there with him.
Plaintiff's business name was Textiletronics.
As concerns Plaintiff's 1996 income tax return, $15,000.00 is due to the Internal Revenue Service (IRS). There was an agreement CT Page 3841 with the IRS to pay $1,000.00 per month to liquidate the debt.
The residence of the parties at 149 Geer Road has been foreclosed and there is a deficiency due and owing.
Plaintiff has back problems; it gets thrown out on occasion if he lifts anything heavy and his knees are going bad.
In working on textile machinery, Plaintiff often requires help with heavy weights or motors.
Some time after the Defendant left the residence and while the Plaintiff was still residing there, the premises were burglarized.
Plaintiff was represented in the foreclosure action by Attorney Irving.
Plaintiff now pays $1,000.00 a month for an apartment, two of his children live with him and will help out financially.
It is Plaintiff's claim that the value of the goods, furnishings and antiques removed from the foreclosed residence by the Defendant were worth $50,000.00.
When he is traveling incident to his work, Plaintiff stays in modest lodgings. See Plaintiff's Exhibit 1.
Plaintiff has no pension presently and no health insurance.
Plaintiff's business is not incorporated.
Defendant's Exhibit A, the 1994 income tax return of the parties' Schedule C for Plaintiff's business, reflects gross receipts of $157,746.00 and net profit of $31,438.00; for 1995 Schedule C, gross receipts $249,705.00 and net profit of $42,063.00, Defendant's Exhibit B for 1996, Schedule C $186,326.00 and net profit of $47,650.00. See Defendant's Exhibit C.
Plaintiff does some textile machine design work to assist in keeping older machines operating efficiently.
The projected 1997 gross from Plaintiff's projected Schedule C is anticipated at $189,469.00 and projected expenses of CT Page 3842 $154,924.00. See Defendant's Exhibit D.
Plaintiff has paid Defendant's counsel to date $1,000.00 and $2,500.00 to counsel in the foreclosure.
For record of Plaintiff's business account with Jewett City Savings Bank for the business Textile Electronics May 1997 through December 1997 see Defendant's Exhibit E.
Plaintiff's hourly rate varies from $20.00 an hour to $100.00 an hour depending on the job and the client.
Plaintiff has done electronic work on textile machines in the past in Canada and India. He travels all over the United States; has been in this field for 20 years, the last 15 years for himself.
Plaintiff has had discussions with some companies where he would receive $100,000.00 annually. This would require he relocate to Mexico.
Plaintiff has received an offer from a business in Pennsylvania for $40,000.00 a year.
Plaintiff received $1,900.00 in an insurance settlement for damage to the residential premises during the burglary.
During the summer months, the Plaintiff in the past has had the opportunity to work a second job as mate on the fishing vessel Mijoy, for which he receives $100.00 a trip.
The second job is during the period April through November and is sporadic.
Plaintiff claims he owes various companies $14,000.00±, G.L.B., La Mar Knitting, Alco, Oliver Kay and Brookfield Knitting, but these obligations are not shown on his financial affidavit.
Plaintiff last sought medical assistance five or six years ago.
There were a variety of problems in the home due to conduct of the parties' children by prior marriages. CT Page 3843
Plaintiff has an office in his present apartment at Brown Street in Voluntown.
Plaintiff's automobile was recently damaged in an accident while being operated by his friend Shannon Bycheck.
Plaintiff visits the Mohegan Sun Casino and holds a patron's card there.
Plaintiff acknowledges having gambled away at least $15,000.00 at Mohegan Sun, which he visits on weekends playing the slots. Plaintiff receives so-called "comp points" at the casino, which can be used to buy food or meals or items in the casino's catalog.
According to his financial affidavit, Plaintiff has 22,000 points accumulated at the casino where he recently received a large TV, VCR and clothing, using approximately 1,200 "comp points".
In January 1998, Plaintiff was at the casino seven times to gamble; in February, 12 times. See Defendant's Exhibit G.
Some of the problems in the parties' home involving their children were drug-related involving the children only.
Plaintiff helped to support the Defendant's children by a prior marriage as the children's natural father apparently shirked this obligation.
During part of the marriage, Defendant's children by a prior marriage were on State assistance.
The Defendant is age 53.
This is a marriage of almost 25 years duration.
Defendant currently engages in home health care to the elderly ten hours a week.
Defendant has a fistula which constantly drains, must be dressed twice a day and must heal from the inside out. Eventually surgery will be required.
Defendant has high blood pressure. CT Page 3844
Defendant has no health insurance.
At one time, Defendant had a State job at $3.00 an hour. At one time, Defendant worked for a trucking company.
Defendant has a high school education and has taken courses at Three Rivers College.
Defendant takes herbal diet pills, which cost $64.00 a month, and medication for high blood pressure, which costs $75.00 per prescription. Defendant provided her counsel with a retainer of $1,500.00.
Although the Defendant claims that the Plaintiff had an affair with a lady in New York, the Court finds that there is no reliable evidence thereof.
Defendant has arthritis and has had four hernia operations during the marriage.
The Defendant acknowledges being at least partly responsible for the breakdown of the marriage.
On being before the Court, Solomon, J., on June 13, 1997, the Plaintiff at the Court's direction counted out $6,800.00 in cash, which he had on his person.
See page 35 of Defendant's Exhibit K, the court transcript of proceedings.
On June 13, 1997, the Court, Solomon, J., found that the Plaintiff earns approximately $900.00 per week.
On June 13, 1997, the Court, Solomon, J., opined that the Defendant had a potential earning capacity of $200.00 to $250.00 per week.
On June 13, 1997, the Court, Solomon, J., determined an arrearage of $4,160.00 and ordered that it be liquidated at the rate of $40.00 per week.
See Defendant's Exhibit K.
The Defendant acknowledged that the present arrearage, as of CT Page 3845 February 24, 1998, is $1,780.00.
The Plaintiff has assisted in paying an educational loan for the Defendant's daughter by a prior marriage.
The financial affidavit of the Plaintiff shows gross weekly wage of $664.00, with FICA, State income tax and Federal income tax deductions totalling $214.00, for a net of $450.00.
Plaintiff's weekly expenses, including the $320.00 existing alimony order, totals $659.00.
Plaintiff's liabilities, as shown on his affidavit, total $38,000.01, which includes the debt to the IRS and $25,000.00 entitled mortgage arrears.
The premises, as noted, have been foreclosed and there was no firm evidence provided to the Court as to any deficiency judgment.
Plaintiff has a 1996 Chevrolet motor vehicle with a loan balance of $12,000.00.
Plaintiff values an emerald-cut diamond, which he gave to the Defendant, at $6,000.00.
The Court received no credible evidence as to what the "comp points" so-called, shown on Plaintiff's financial affidavit as "Amex Award Points" are worth. The points number 22,000.
The Defendant's financial affidavit shows gross weekly income of $70.00, deductions of $5.00, net $65.00.
The Defendant did not show the current alimony order of $320.00 on her affidavit.
Defendant's expenses total $490.00 weekly, which includes gifts, entertainment and vacations.
Defendant's debts to Household Finance, Visa, Lane Bryant and Roamans totals $11,159.00.
The Defendant has a 1993 Chevrolet on which no debt is owed.
Discussion
CT Page 3846
This is a marriage of almost 25 years.
The one child issue of the marriage is now age 21 and presumably self-sufficient.
The Plaintiff is age 53 and the Defendant is age 53.
Both are high school graduates and Plaintiff's education is noted herein.
The Defendant has a somewhat bleaker future physically than the Plaintiff.
The home and residence of the parties has been foreclosed and the bank is presumably in possession.
Whether the foreclosure could have been prevented or some equity in the home salvaged if the Plaintiff had exerted his best efforts in trying to save the home instead of losing $15,000.00± at the casino troubles the Court.
The potential for earning any appreciable sums by the Defendant in view of her condition seems remote.
The Plaintiff, while he has some medical problems, still is in a much more advantageous position insofar as the ability to earn is concerned vis a vis the Defendant.
The parties were unable to agree on the dividing of the household furnishings and other personalty, and the Court was not provided with any reliable valuation or appraisal.
The lengthy list of personalty in the possession of each is reflected on Plaintiff's Proposed Orders filed February 20, 1998.
The Law
"The power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage. Without this wide discretion and broad equitable power, the courts in some cases might be unable fairly to resolve the parties' dispute. . . ." Pasquariello v. Pasquariello,168 Conn. 579, 585 (1975). CT Page 3847
Alimony (C.G.S. § 46b-82)
In lieu of or in addition to assignments under C.G.S. §46b-81, the court may order periodic alimony to either party. C.G.S. § 46b-82. The purpose of alimony is "not to punish the guilty, but to continue the duty of support to one legally abandoned." Tobey v. Tobey, 165 Conn. 742, 748 (1974).
In ordering alimony, the court shall be guided by the factors enumerated in C.G.S. § 46b-82:
(a) the length of the marriage;
(b) the causes of the annulment, dissolution, or separation;
 (c) the age, health, station, occupation, amount and sources of income, employability, estate, and needs of each of the parties;
 (d) the award, if any, of property which the court may make, pursuant to C.G.S. § 46b-81; and
 (e) the desirability of the parent awarded custody of the minor children securing employment.
Leo v. Leo, 197 Conn. 1, 5 (1985). In determining alimony under C.G.S. § 46b-82, therefore, the court must weigh the station or standard of living of the parties in light of the above statutory factors. Blake v. Blake, 207 Conn. 217, 232 (1988).
The Court has jurisdiction.
Orders
The Court enters the following orders.
The marriage is dissolved on the ground of irretrievable breakdown and the parties are declared to be single and unmarried.
The Court has endeavored to consider all relevant issues in arriving at an order of alimony including age, station in life, length of the marriage, the financial position of each, their state of health, their near term prospects, and weigh their CT Page 3848 candor or lack thereof as observed in the trial.
While the Plaintiff may have been lonely and visited the casino frequently for entertainment, the Court is hard-pressed to understand how as much as $15,000.00 or more could be lost at the casino mindful of the economic positions of the parties.
The Plaintiff also has the potential for substantial earnings based on his testimony as to prospects in Mexico or Pennsylvania.
The Plaintiff shall pay to the Defendant the sum of $300.00 per week as periodic alimony.
The alimony shall terminate on the death or remarriage of the Defendant or her cohabitation with a non-related male.
The Plaintiff shall pay the arrearage due, which is to the amount of $1,780.00, at the rate of $10.00 per week until liquidated.
The real estate known as 149 Geer Avenue, Griswold having been foreclosed and the amount of any deficiency judgment being unknown to the Court, the Court enters no orders incident thereto.
The Plaintiff may retain title to his 1996 Monte Carlo Chevrolet motor vehicle and be responsible for any debt due thereon.
The Defendant may retain title to her 1993 Chevrolet Lumina which appears to be unencumbered.
As to the personal property lists attached to the Plaintiff's Proposed Orders, the Court enters the following order.
As to the list entitled "Property in Possession of Wife", the Defendant may retain all of the items on said list, which is attached hereto, except the following, which shall be delivered to the Plaintiff.
1. The Indian lithographs
2. The computer and printer
3. The juke box with records CT Page 3849
4. Two bottles of Dom Perignon
As to the list entitled "Property in Possession of Husband", the Plaintiff may retain all the items on said list.
The Plaintiff shall maintain his First Colony life insurance policy in the amount of $179,000.00 in full force and effect and shall not pledge, hypothecate or encumber said policy, and he shall name the Defendant as sole, irrevocable beneficiary. This obligation shall continue for so long as the Plaintiff has any alimony obligation to the Defendant.
The Plaintiff shall be solely responsible for the obligation and debt due to the IRS for calendar 1996 and 1997.
The Defendant has presented the Court with a statement concerning attorney's fees. See Defendant's Exhibit I.
The Defendant initially provided a retainer to counsel.
Subsequently, the Court, Solomon, J., ordered the Plaintiff to pay $1,000.00 to Defendant's counsel.
Defendant's counsel now requests the Court to order the Plaintiff to pay to Defendant's counsel the further sum of $4,756.34.
Counsel's statement does not indicate the number of hours spent nor the hourly rate.
The trial lasted one day.
The Court will allow the further sum of $2,000.00 as attorney's fees.
As concerns the attorney's fees, the Court has reflected on the type of proceeding, the complexity or lack thereof, whether there were any novel issues, the respective financial circumstances of each of the litigants.
The Court was not presented with any information concerning the projected cost of any health insurance for the Defendant mindful of her present medical status. CT Page 3850
The Plaintiff shall provide and pay for health insurance coverage for the Defendant mindful of her medical condition and financial position for a period of two years.
The Court notes that there are no pension benefits available to either party based on the testimony and the exhibits.
The Court acknowledges that the Plaintiff's financial affidavit shows net weekly earnings of $450.00 and expenses of $659.00, the expenses including the existing pendente lite order of $320.00 for alimony, but the Court believes that the Plaintiff's potential or abilities for income are such that considerably more might reasonably be expected.
The Defendant's circumstances are such that her negligible earnings of $65.00 a week when added to what the Court has allowed her for alimony still falls far short of what the Defendant needs to survive.
Even if the Court reduces the Defendant's expenses for hairdresser $11.00; tapes, $8.00; gifts, $21.00; entertainment, $20.00 and vacations, $20.00; total $80.00, the Defendant is still far short of what is needed to survive unless she is destined to be a public charge.
Austin, J.