[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married on April 25, 1990, over twelve years ago. The plaintiff, (hereinafter sometimes referred to as the husband) has resided in this State for at least twelve continuous months prior to filing this complaint. He alleges the marriage has broken down irretrievably without hope of reconciliation. There are no minor children issue of this marriage. Neither party has been the recipient of financial aid from the State of Connecticut or any city or town.
This two day trial took place on August 20 and 23, 2002, with both parties represented by capable counsel.
The parties, and the plaintiff's two sisters, testified as to who was at fault for the breakdown of the marriage. The plaintiff and his witnesses testified that the defendant (hereinafter sometimes referred to as the wife) would stay out late on weekends. She would return home drunk from drinking alcohol and on numerous occasions had to be revived. The plaintiff testified that the defendant was primarily at fault. Me was suspicious of her having sexual relations with other men, and his accusations about these affairs led to their having many arguments.
The defendant denied the plaintiff accusations and described him as a controlling husband and that she could do little to satisfy him. In 1992 they decided to attend marriage counseling, and after one year, they felt it did not help them. The arguments became more frequent, therefore the defendant moved out in 1996 for four months. After moving back their differences continued and the relationship rapidly deteriorated. They both admitted to drinking alcohol and using marijuana during the marriage.
The parties both worked full-time from the date of the marriage, he as a police officer for the City of Waterbury and she as a clerk-typist. From 1995 to 1997, she was a full-time student graduating from Naugatuck Valley Community Technical College, receiving an associates degree in CT Page 11790 computer science. Shortly thereafter, she was hired by Waterbury Hospital as a computer analyst, and she is presently working there part-time in order to care for her infant child. She intends to return to full-time employment at Waterbury Hospital in the near future.
The defendant admitted to having one sexual affair with a co-worker after she had moved out of the marital home in November, 2000. The defendant also gave birth to a child on February 1, 2002, and a DNA test found that the plaintiff was not the child's father even though he continued to have sexual relations with her after she moved out. The plaintiff has assumed full responsibility to support and parent this child.
As in many divorces, and in this case, the court finds both parties contributed to the breakdown of the marriage and they were equally at fault. Therefore, a decree of dissolution is entered pursuant to § 40b-40 (c)(1) of the Connecticut General Statutes.
Some additional background facts are relevant to deciding the issues in this case. The plaintiff has been employed as a police officer for the City of Waterbury for the past fourteen years. The defendant is presently working as a computer analyst for Waterbury Hospital. In his financial affidavit, the plaintiff is earning a gross weekly salary of $1,039 and after deductions, a net salary of $594.95. His living expenses are listed at $739.96. His assets are listed as $18,000, his one-half interest in the marital home, $17,500 in motor vehicles, $18,800 in other personal property, $1,001 in bank accounts, $108,988.35 in a certificate of deposit, $313.83 in a credit union account, $7,805.30 in a Nationwide retirement account, $59,463.99 in his contributions plus interest to his police pension as of September 20, 2001, and $3,500 in miscellaneous furniture/furnishings, claiming his total assets at $235,221.41, with liabilities of $10,060.
On her financial affidavit, the defendant lists her part-time gross weekly wages at Waterbury Hospital at $500 with net weekly wage of $391. Her weekly expenses are listed at $533. Her assets are listed at $20,000 for her one-half interest in the marital home, $2,545 in deferred compensation, and $20 in a bank account, for total assets of $22,565. She expects her weekly income will increase to approximately what the plaintiff is earning after her child is placed in day care. Therefore, she has withdrawn her claim for periodic alimony.
She is thirty-two years old, in good health, and expects to be employed as a computer analyst for many years. The plaintiff is now thirty-five and has been working full-time as a police officer in Waterbury for the CT Page 11791 past fourteen years. He believes the injuries he sustained in an automobile accident on September 1, 1999, are permanent, and he is still taking medication to control the pain.
The defendant had her automobile packed with her possessions ready to move and live with her sister in Cheshire on September 1, 1999. But after learning the plaintiff was involved in an automobile accident that same day, and having been admitted to Waterbury Hospital with multiple fractures, she delayed her move to help care for him.
After he returned home from rehabilitation in November 1999, she moved out of the marital home permanently.
The plaintiff and his sisters testified that the defendant provided him with minimal care while he was in Waterbury Hospital for seventeen days and for the two months of rehabilitation at Gaylordsville Rehabilitation Center. He claimed his family provided him with substantial care and financial support. The defendant believed she did as much as possible to care for him while she continued to work at Waterbury Hospital. The court finds that both the plaintiff's family and the defendant helped the plaintiff to recuperate.
In April, 2000, the plaintiff received a net award of $249,000 for the injuries and damages he sustained in the automobile accident of September 1, 1999. This award was acquired during the marriage, and is therefore a marital asset distributable as property pursuant to § 46b-81 of the Connecticut General Statutes. Lopiano v. Lopiano, 247 Conn. 356,363-364, 374-375 (1999). The plaintiff claims that the remaining balance from the $249,000 settlement award is now in a certificate of deposit in the amount of $108,988.35. The court ordered him to file an accounting of his expenditures since receiving the settlement proceeds and the court entered his account as an exhibit. (See Plaintiff's Exhibit 5). The automatic orders became effective on May 29, 2001, when the plaintiff signed the complaint. They prohibit any party in a dissolution action from transferring any asset without the written consent of the other or obtaining a court order except for customary household expenses or reasonable attorney's fees. The plaintiff did not receive the defendant's written consent or a court order to transfer any marital assets after May 29, 2001. During this thirteen month period, from April, 2000 to May 29, 2001, the plaintiff purchased gifts and repaid loans to his family for about $30,500, purchased gifts for himself of $66,054.47, and he paid $14,950 to the defendant for total expenditures of $111,504. He admitted spending $30,585.48 for non-household and non-legal expenses after the automatic orders became effective on May 29, 2001. (See Plaintiff Exhibit 5 and subparagraph 1 of the Automatic Orders). The court finds the CT Page 11792 plaintiff's expenditures of $30,585.48 made after May 29, 2001, should be added to the $108,988.35 in the certificate of deposit for a total of $139,573.83 available for distribution pursuant to Section 46b-81 of the Connecticut General Statutes. He testified the defendant orally accepted the $14,950 for her one-half interest in the marital home. The court rejects this oral defense for two reasons: 1) she could not be bound to any oral agreement to convey this property since it would violate the statute of frauds. (See C.G.S. § 52-550) and 2) She was not represented at that time by an attorney. He gave his family $30,500 in gifts and so-called loans and spent $66,054.47 on gifts to himself. The court finds it equitable that he receive no credit for the $14,950 given to the defendant from the settlement proceeds.
On his financial affidavit the plaintiff listed three principal assets.
1. His contributions of $59,463.93 to his policeman's pension with the City of Waterbury for his fourteen years of service. This pension vested after ten years.
2. A certificate of deposit for $108,988.35 which he testified is the balance from his $249,000 negligence settlement.
3. The parties agreed that present total equity in the marital home owned jointly by the parties is $36,000, or $18,000 for their respective one-half interest.
The defendant's expert witness, James A. Gobes, a consulting actuary, with over twenty-five years experience, computed the present value of his police pension to be $160,353 with a monthly benefit of $2,422. (See Defendant's Exhibit A). The court found his testimony to be probative and credible and accepts his value for this pension.
This vested pension benefit is a property right and distributable pursuant to Connecticut General Statutes § 46b-81. Krafick v.Krafick, 234 Conn. 783, 792 (1995). The court finds the present value of this pension to be $160,353 and not $59,463.93 as listed on the plaintiff's financial affidavit.
The plaintiff testified that he settled his automobile negligence claim for $249,000 which has now been reduced to $108,988.35, and is presently invested in a certificate of deposit. The court has previously found that the $30,585.48 the plaintiff spent after the automatic orders became effective on May 29, 2001, should be added to the $108,988.35 certificate of deposit, for a total property asset of $139,573 distributable pursuant CT Page 11793 to Connecticut General Statutes § 46b-81. Lopiano v. Lopiano,247 Conn. 356, 370-371 (1998).
The court finds the plaintiff's total assets are $336,427 and not $235,221.41 as listed on his financial affidavit and the defendant's are $20,565.
It is well established that the division of marital assets and alimony are governed by Connecticut General Statues Sections 46b-81 and 46b-82
and the date the dissolution decree is entered controls and not the date the parties may have separated, in this case in late November, 1999.Tobey v. Tobey, 165 Conn. 742, 748 (1974); Sunbury v. Sunbury,216 Conn. 673-676, Wendt v. Wendt, 59 Conn. App. 656, 661-662 (2000).
The court has considered the proposed orders of both parties, their testimony and that of the witnesses, examined their financial affidavits, and all of the criteria in Connecticut General Statues §46b-81 (the assignment of property statute), § 46b-82 (the alimony statute), § 46b-62 (payment of attorney's fees), the case law and the exhibits entered into evidence and issues the following orders.
 ORDERS
1. Real Estate — 143 Heritage Lane, Waterbury, Connecticut
They purchased the marital home at 143 Heritage Lane in Waterbury in the Spring of 1997. The parties paid the mortgage, taxes and other costs relating to the home from a joint checking account to which they both contributed.
The defendant shall transfer her one-half interest in the marital home to the plaintiff for $18,000, the stipulated value of her one-half equity in this home. The defendant's attorney shall hold her quit claim deed in escrow until the $18,000 is delivered to her. The plaintiff agrees to hold the defendant harmless on the present mortgage and from any other liability or expenses related to this property.
The plaintiff shall have sixty days from the date of this decision to refinance this mortgage, if he so chooses. The court shall retain jurisdiction as to all issues relating to the marital home.
2. Personal Property
The plaintiff shall retain all of the furniture, furnishings and personal effects in the marital home except the items given to her which CT Page 11794 are shown on Schedule A of the defendant's proposed orders that belong to her. She may remove them within the next thirty days upon giving the plaintiff two days notice.
3. Alimony
Neither party is entitled to any periodic alimony.
The plaintiff is ordered to pay the defendant $15,000 as lump sum alimony.
4. Automobile Negligence Award
The plaintiff is ordered to pay the defendant $20,000 which is approximately fifteen percent (15%) of the amount $139,573.83 distributable to her.
5. Retirement Assets
The plaintiff shall retain his deferred compensation of $7,805.30 with Nationwide Retirement Solution.
The defendant shall retain her invested pension plan with Waterbury Hospital (valued at $1,600) and the 401K plan with V Technologies (valued at $945) on her financial affidavit.
The plaintiff's police pension with the City of Waterbury, which the court found the present market value to be $160,353, shall be divided one-third (1/3) to the defendant and two-thirds (2/3) to the plaintiff by way of a qualified domestic relations order as required by the City of Waterbury. The parties will equally share the cost of preparing the same. The court shall retain continuing jurisdiction until this order is completed.
6. Motor Vehicles
The plaintiff shall retain all the motor vehicles and the jet ski listed on his financial affidavit.
The defendant shall retain the 1999 Monte Carlo automobile and hold the plaintiff harmless from any and all liabilities regarding the same.
7. Liabilities
Each party shall be responsible for all debts listed on their financial CT Page 11795 affidavits and shall hold the other harmless from any of their respective debts.
8. Counsel Fees and Costs
The plaintiff shall contribute the sum of $5,000 for the defendant's attorney's fees. The court has considered the affidavit filed by the defendant's attorney that her fees total $12,609.50, based on an hourly rate of $275, which the court finds reasonable for this case.
7. Health Insurance
Each party shall be responsible for their health insurance coverage.
The defendant shall be entitled to COBRA benefits (if available) from the plaintiff's employer, and be responsible for the premiums for said health insurance benefits.
PETRONI, JTR. CT Page 11796